DAVID RISLEY, Respondent, *v.* THE PHENIX BANK OF THE
CITY OF NEW YORK, Appellant.

A check is a bill of exchange within the statute (1 R. S. 768, § 6), declar-
ing that no person shall be charged as acceptor of a bill of exchange
unless his acceptance is in writing.

A verbal promise by a bank therefore to pay a check does not create a
cause of action thereon.

An assignment of an account may be made by oral agreement, without
writing, or any written statement of the claim assigned ; and, if founded
on a valid consideration, vests in the assignee a right to proceed in his
own name for the collection of the debt.

So, also, an oral assignment for a valid consideration of a portion of a debt
is valid.

Where, concurrently with the giving of a check for a portion of the amount
standing to the credit of the drawer upon the books of defendant, there
was an oral agreement between the drawer and payee, by which the
former, for a valuable consideration, agreed to assign so much of the
indebtedness of the bank to him as was represented by the check, and
the check was given to enable the payee to collect and receive the por-
tion of the debt assigned, *held,* that the check was not the contract
between the parties, and so did not render oral evidence of the agree-
ment inadmissible ; and that the parol assignment, was sufficient to vest
in the plaintiff a title to the portion of the debt assigned.

Plaintiff presented the check, and demanded payment, January 4, 1865,
notifying defendant that so much of the claim of the drawer as was
represented by the check had been transferred to him ; defendant's presi-
dent promised to pay on presentation by some person known to the
bank.   On the next day when the check was again presented, defendant
refused to pay, on the ground that on the morning of that day the debt
had been seized by the United States, in pursuance of proceedings in-
stituted on that day, under the confiscation acts of Congress.   These
proceedings were set up as a defense, and on the trial defendant, to
sustain the defense, offered in evidence the record of a District Court of
the United States, showing that the deposit to the credit of the drawer
was attached in proceedings against the estate, property, etc., of the bank

of G. (the drawer), on deposit with the defendant on January 5, 1865, and that defendant paid over to the marshal, in pursuance of a decree of said court in such proceedings, the whole amount of the credit. The assignment to plaintiff was made in May, 1861, before the passage of the confiscation acts. *Held*, that the record constituted no defense, and was properly excluded; that if notice to defendant was necessary to complete plaintiff's title, sufficient notice was given the day prior to the seizure; that the plaintiff was not concluded by the adjudication of the District Court to the effect that the property seized belonged to the bank of G.; also that the District Court acquired no jurisdiction under said acts to proceed for the forfeiture of a debt owing to a corporation.

Proceedings under the confiscation acts of Congress, while in the nature of proceedings *in rem*, operate only to divest the title of the party alleged to be the owner of the property seized, and judgment of confiscation and forfeiture does not divest or affect the title of third persons originating prior to the seizure, or of the real owner not proceeded against.

The confiscation acts do not contemplate or authorize the confiscation of the property of a corporation.

Where a court, authorized by statute to entertain jurisdiction in a particular case only, undertakes to exercise the power conferred in a case to which the statute has no application, it acquires no jurisdiction; its judgment is a nullity, and will be so treated when it comes in question, either directly or collaterally.

(Argued November 16, 1880; decided January 18, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made November 6, 1879, affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial.

The amended complaint in this action contained three counts, the first two set forth a check, dated May 20, 1861, drawn by the Bank of Georgetown, South Carolina, upon defendant, payable to the order of plaintiff, for $10,000, alleged to have been delivered to plaintiff by the drawer for a good and valuable consideration, and to have been drawn against a deposit with defendant, largely exceeding that amount to the credit of the drawer. The third count alleged an indebtedness of defendant to said Bank of Georgetown, to the amount of $10,000, an assignment on the date aforesaid of that amount of said indebtedness to plaintiff, a demand and refusal to pay.

The answer admitted that at the date of the check, and up to January 5, 1865, said Bank of Georgetown had on deposit with it more than $10,000, and alleged, among other things, that on that day the whole amount of said deposit " was duly seized and attached by the United States of America, and in and by virtue of certain proceedings duly had in the District Court of the United States for the Southern District of New York, said court having jurisdiction in the premises, a monition was duly issued, and the same was duly served on this defendant, by the United States marshal for the Southern District of New York, and thereupon such proceedings were duly had and taken in said court, in those proceedings which said court had jurisdiction thereof ; that afterward, and on or about the 24th day of January, 1865, a certain decree of said court was duly given and made, and thereupon and on said day a duly authenticated copy thereof was duly served upon this defendant, and in pursuance of said decree on the said last-named day, the said defendant delivered to the said marshal * * * the whole sum then on deposit with said defendant to the credit of said Bank of Georgetown, and being the same moneys seized and attached as aforesaid."

The facts appearing upon the trial are sufficiently set forth in the opinion.

*Samuel Hand* for appellant.   The draft or bank check declared on in this action is, to all intents and purposes, a bill of exchange. (*Harker* v. *Anderson*, 21 Wend. 372; *Boehm* v. *Sterling*, 7 T. R. 419–426; *Cruger* v. *Armstrong*, 3 Johns. Cas. 5 ; *Merchants' Bk.* v. *Spicer*, 6 Wend. 443, 445; *Murray* v. *Judah*, 6 Cow. 484, 490; *Pike* v. *Irwin*, 2 Sandf. 14; *Lunt* v. *Bk. of N. America*, 49 Barb. 221; *Chapman* v. *White*, 6 N. Y. 412; *Bellamy* v. *Majoribanks*, 8 Eng. L. & Eq. 523; *Schneider* v. *Irving Bk.*, 1 Daly, 500; *Duncan* v. *Berlin*, 60 N. Y. 151; *Atty.-Gen.* v. *Continental Life Ins. Co.*, 71 id. 330; 11 Hun, 484; 1 R. S. 768, § 6; *Luff* v. *Pope*, 5 Hill, 577; *Chapman* v. *White*, 6 N. Y. 412; *Blackiston* v. *Dudley*, 5 Den. 574; *Duncan* v. *Berlin*, 60 N. Y. 151; 11 Hun, 484;

*Rosenthal* v. *Maston Bk.*, 21 A. L. J. 28; *Nat. Bk. of Brock-ville* v. *Second Nat. Bk. of Lafayette*, 22 id. 110.) The check in this case having been drawn on the general funds of the drawer in the hands of the drawee, and not on any particular deposit or fund, did not operate as an equitable assignment of the fund. (*Attorney-Gen'l* v. *Continental Life Ins. Co.*, 71 N. Y. 325; *Dykers* v. *Leather Manufacturers' Bk.*, 11 Paige, 613; *Schneider* v. *The Irving Bk.*, 1 Daly, 500.) Being drawn for a part of the fund only, whether on a general or particular fund, it did not amount to an assignment of that part, or give a lien as against the drawee, unless he consented to appropriation by an acceptance of the draft. (*Cowperthwaite* v. *Sheffield*, 1 Sandf. 416, 450.) Conversations prior to and contemporaneous with the execution of a written contract are merged in the written instrument, and this rule applies as well to notes, checks and bills of exchange as to other contracts. (*Johnson* v. *McIntosh*, 31 Barb. 267; *Burbank* v. *Beach*, 15 id. 326; *Payne* v. *Ladue*, 1 Hill, 116; *Ely* v. *Kilborn*, 5 Den. 514; *Brown* v. *Hull*, 1 id. 400; *Fitzhugh* v. *Runyon*, 8 Johns. 375; *Wells* v. *Baldwin*, 18 id. 45; *Erwin* v. *Saunders*, 1 Cow. 249; *Eaves* v. *Henderson*, 17 Wend. 190; *Gridley* v. *Dole*, 4 N. Y. 386; *Lewis* v. *Jore*, 7 Bosw. 366; *Montgomery Bk.* v. *Alb. City Bk.*, 8 Barb. 396; *Bk. of Albion* v. *Smith*, 27 id. 489; *Stevens* v. *Cooper*, 1 Johns. Ch. 425; Martin & Hill's Notes to Phil. Ev. 1467; 1 Phil. Ev. 561; 2 Wharton on Evidence, § 1058; *Attorney-Gen'l* v. *Continental Life Ins. Co.*, 71 N. Y. 331; *Mandeville* v. *Welsh*, 5 Wheat. 286; *Smith* v. *Jones*, 15 Johns. 229; *Guernsey* v. *Carver*, 8 Wend. 492; *Miller* v. *Covert*, 1 id. 487; 1 Pars. on Contracts, 223–224, * 229, and cases; *Sexton* v. *Fleet*, 2 Hilt. 477; *Briggs* v. *Dorr*, 19 Johns. 96; *Rupp* v. *Blanchard*, 34 Barb. 629.) The alleged oral assignment was altogether inoperative as against the Phenix Bank, because the bank had no notice of the same. (1 Pars. on Contracts, * 229, 230; *Stocks* v. *Dobson*, 19 Eng. Law and Eq. 97; *Jones* v. *Witter*, 13 Mass. 307; *Shuttleworth* v. *Bruce*, 7 Robt. 162; *Bishop* v. *Holcomb*, 10 Conn. 444; *Parks* v. *Innes*, 33 Barb. 37; *Field* v. *Mayor*, 6

N. Y. 188.) The court below erred in excluding from the jury the confiscation proceedings and decree of confiscation in the District Court of the United States; the judgment of the District Court was a perfect defense to the defendant until reversed or modified on appeal. (*Grignon's Lessee* v. *Astor*, 2 How. [U. S.] 338; 2 Burrill's Law Dict. 113; 12 Stat. at Large, 319, 589; *Miller* v. *United States*, 11 Wall. 299; *Tyler* v. *Defrees*, id. 349; *Cooper* v. *Reynolds*, 10 id. 308; *The Confiscation Cases*, 20 id. 92; Stephens on Pleading, 292; *Pike* v. *Wassel*, 4 Otto, 712; Act of August 6, 1861, 12 Stat. at Large, 319; Act of July 17, 1862, id. 589; *Kelsey* v. *Beers*, 16 Abb. Pr. 228; *Kenpes' Lessee* v. *Kennedy*, 5 Cranch, 185; *Tobias* v. *Watkins*, 3 Pet. 193; *Chemung Canal Bk.* v. *Judson*, 8 N. Y. 254; *Elliott* v. *Peirsol et al.*, 1 Pet. 328, 340; *Buckman* v. *Coewell*, 1 N. Y. 507; Watson on Sheriffs, 53, 54, 55; 7 Law L.; *Gelston* v. *Hoyt*, 3 Wheat. 246; *Williams* v. *Armroyd*, 7 Cranch, 423; *Hudson* v. *Guestier*, 6 id. 281; 1 Greenleaf on Evidence, §§ 525, 543 [Red. ed]; *Grignon* v. *Astor*, 2 How. [U. S.] 319; *Cocke* v. *Halsey*, 16 Pet. 71; *Thompson* v. *Tolmie*, 2 id. 157; *Voorhies* v. *Bank of United States*, 10 id. 449; *McCormick* v. *Sullivant*, 10 Wheat. 192; *Ex parte Watkins*, 3 Pet. 193; *Watson* v. *Burt*, 9 Hun, 470; *Wilcox* v. *Jackson*, 13 id. 511; *Union Ins. Co.* v. *United States*, 6 Wall. 763; *United States* v. *Stock of R. Co.*, 5 Blatchf. 231; *Wallach* v. *Van Riswick*, 2 Otto, 203; *Stevens* v. *Ins. Co.*, 41 N. Y. 149; *United States* v. *Amedy*, 11 Wheat. 392; *People* v. *May*, 27 Barb. 238; *Thornton* v. *Bank of Washington*, 3 Pet. 36; *Society* v. *Town of New Haven*, 8 Wheat. 464; U. S. Rev. Stat., § 1; *Railway Co.* v. *Whitton*, 13 Wall. [U. S.] 328; *Bank of Augusta* v. *Earle*, 13 Pet. 519; *Bement* v. *Wisner*, 1 C. [N. S.] 143; *Wheeler* v. *Dakin*, 12 How. Pr. 537; *Halstead* v. *Black*, 17 Abb. 227; *Miller* v. *The United States*, 11 Wall. 268.)

*James E. Risley* for respondent. Plaintiff was entitled to recover even though the decree of confiscation was valid because

the assurance of defendant, when the check was presented for payment, that the drawer's signature was correct; that it still held the funds, and that the check was good and would be paid, rendered him liable for the amount. (*Farmers & Mechanics' Bk.* v. *B. & D. Bk.*, 16 N. Y. 125 ; *Cooke* v. *State Nat. Bk.*, 52 id. 96 ; *Marine Nat. Bk.* v. *Nat. City Bk.*, 59 id. 67 ; *Merchants' Bk.* v. *State Nat. Bk.*, 10 Wall. 604 ; *Barnes* v. *Ontario Bk.*, 19 N. Y. 152, 159 ; *Meads* v. *Merchants' Bk.*, 25 id. 143 ; *Irving Bk.* v. *Wetherald*, 36 id. 335 ; *Barnet* v. *Smith*, 10 Foster [N. H.], 256 ; *Epsy* v. *Bk. of Cincinnati*, 18 Wall. 604.) A good cause of action against the Phenix Bank is contained in the complaint and made out on the evidence as upon the assignment of a debt or demand. (*Chapman* v. *White*, 6 N. Y. 412 ; *Ætna Nat. Bk.* v. *Fourth Nat. Bk.*, 46 id. 82 ; *Prescott* v. *Hull*, 17 Johns. 284 ; *Ford* v. *Stuart*, 19 id. 342 ; *Waldron* v. *Baker*, 4 E. D. Smith, 440 ; 1 Parsons on Contracts [6th ed.], 228 ; Bliss' N. Y. Code, 248, note *d* ; *Kessel* v. *Albetis*, 56 Barb. 362 ; *Hooker* v. *Eagle Bk.*, 30 N. Y. 83 ; *S. C.*, 11 Hun, 484.) The proceedings taken for forfeiture in the District Court were properly excluded, as that court had no authority to entertain them and they were void. (*U. S.* v. *Shares of Stock*, 5 Blatchf. 201 ; *Brown* v. *U. S.*, 8 Cranch, 110 ; *Planters' Bk.* v. *Union Bk.*, 16 Wall. 496 ; *Bell* v. *Dole*, 11 Johns. 172 ; *Story* v. *Stebbins*, 5 Cow. 210 ; *Myers* v. *Foster*, 6 id. 567 ; *Andrews* v. *U. S.*, 2 Story [C. C.], 202 ; *Ferrett* v. *Atwill*, 1 Blatchf. 151 ; *U. S.* v. *1,412 Gall. Spts.*, 10 id. 428 ; *U. S.* v. *Morris*, 2 Bond, 23 ; *U. S.* v. *Clayton*, 2 Dillon, 219 ; *U. S.* v. *Huckabee*, 16 Wall. 431 ; *U. S.* v. *Sheldon*, 2 Wheat. 119 ; *U. S.* v. *Wiltberger*, 5 id. 76 ; *U. S.* v. *Ragsdale*, 1 Hempstead, 497 ; *Planters' Bk.* v. *Union Bk.*, 16 Wall. 496.) The proceedings in the District Court, for confiscation, were fatally defective and irregular, and the court did not have or acquire jurisdiction to pronounce a valid decree forfeiting the property of the Bank of Georgetown. This is so, notwithstanding such property may have been the lawful subject of confiscation. (*The Hoppet*, 7 Cranch, 389 ; *The Caroline*, id. 500 ;

*The Charles,* 1 Brock. 347; *The Mary Ann,* 8 Wheat. 380; 2 Parsons on Maritime Law, 681; *The Sarah,* 8 Wheat. 39; *Union Ins. Co.* v. *U. S.,* 6 Wall. 759; *Armstrong's Foundry,* id. 766; *U. S.* v. *Hart,* id. 770; *Confiscation Cases,* 7 Wall. 462; *Morris' Cotton,* 8 id. 511; *Ex parte Graham,* 10 id. 541; *U. S.* v. *Winchester,* 99 U. S. 372; *Thompson* v. *Whitman,* 18 Wall. 457; *Haggerty* v. *Wilber,* 16 Johns. 287; *Goll* v. *Hinton,* 8 Abb. 120; *Smith* v. *Orser,* 42 N. Y. 132; *U. S.* v. *Graff,* 4 Hun, 634. The record of the proceedings was wholly irrelevant and immaterial. (*Burbank* v. *Semmes,* 99 U. S. 138; *Conrad* v. *Waples,* 96 id. [6 Otto] 279.) Although it was in evidence that the inhabitants of South Carolina were engaged in insurrection in May, 1861, their character — rebels and insurrectionists — did not deprive them of the right to contract with, and sell to, each other. (*Conrad* v. *Waples,* 96 U. S. [6 Otto] 279; *Mitchell* v. *U. S.,* 21 Wall. 352.) Where a chose in action is assignable, it may be assigned in separate parcels to different persons, and either of the assignees may maintain an equitable action to recover the portion to him assigned. (*Field* v. *Mayor, etc.,* 6 N. Y. 179; *Cook* v. *Genesee Mut. Ins. Co.,* 8 How. 514; *Moor* v. *Trumpbour,* 5 Cow. 488; *Hooker* v. *Eagle Bk.,* 30 N. Y. 83; Code of Procedure, § 111; *Muir* v. *Schenck,* 3 Hill, 228; *Richardson* v. *Ainsworth,* 20 How. 521; *Ruckman* v. *Pitcher,* 20 N. Y. 9; *The Second Ave. R. R. Co.* v. *Coleman,* 24 Barb. 300.)

ANDREWS, J. The check drawn by the Bank of Georgetown on the defendant, having been drawn on the general deposit of the drawer in the hands of the drawee, in the ordinary form of a bank check, did not, of itself, operate as an equitable assignment to the payee, of the fund, to the amount of the check. The check was a bill of exchange, within the statute that no person shall be charged as an acceptor of a bill of exchange, unless his acceptance shall be in writing; and the defendant not having made a written acceptance of the check, no right of action thereon accrued to the plaintiff by reason

of the verbal promise to pay the check made by the defendant on its presentation. (1 R. S. 768, § 6 ; *Harker* v. *Anderson*, 21 Wend. 372 ; *Luff* v. *Pope*, 5 Hill, 413 ; *Chapman* v. *White*, 6 N. Y. 412 ; *Duncan* v. *Berlin*, 60 id. 153 ; *Atty.-Gen.* v. *The Continental Life Ins. Co.*, 71 id. 325.)

The court, on the trial, ruled in accordance with the settled doctrine upon this subject, that the plaintiff was not entitled to recover upon the cause of action founded upon the check and the verbal promise of payment. But the court further ruled, that he was entitled to recover upon the third cause of action, which alleged an assignment of $10,000 of the debt owing by the defendant to the Bank of Georgetown, made on the 20th day of May, 1861, the day on which the check was dated and delivered to the plaintiff, if the jury should find that concurrently with the giving of the check there was an oral agreement, for a valuable consideration, made between the Bank of Georgetown and the plaintiff, to assign to the latter' $10,000 of its debt against the Phenix Bank. The court stated to the jury, that if the transaction between the plaintiff and the Bank of Georgetown was simply a purchase of the check or draft, the plaintiff could not maintain the action, and that the question for the jury to determine was, "whether there was, independent of the check, an agreement of assignment and purchase and sale of $10,000 of the debt from the Phenix Bank to the Bank of Georgetown ;" and that if there was such an agreement, the plaintiff was entitled to recover.

The Phenix Bank, prior to May 20, 1861, was the correspondent in the city of New York of the Bank of Georgetown, a banking corporation located at Georgetown, South Carolina; and on that date there was on its books a credit to the Bank of Georgetown to the amount of about $18,000, derived from deposits and collections, which sum was then owing by the Phenix Bank to the Bank of Georgetown. The plaintiff was a resident of Georgetown, and had dealings with the Bank of Georgetown. He was examined on the trial, as a witness in his own behalf, and testified in substance that on the day when the check was dated, the president of the

bank stated to him that the bank had a claim of $17,000 or $18,000 against the Phenix Bank, and offered to sell it to the plaintiff, stating as a reason, that he was afraid it might be lost during the war, and that he was unwilling to carry the risk; that the plaintiff offered to purchase the claim at fifty cents on the dollar, which offer was declined, and the president then offered to sell it for Southern bank bills at par; that the plaintiff then offered, if the bank would divide the claim, to purchase $10,000 of it, upon the terms proposed, which offer was accepted, and the plaintiff thereupon paid the $10,000; that a question arose as to what kind of a transfer should be given, and the president of the bank said he would give the plaintiff an order on the Phenix Bank for the amount, and thereupon gave the plaintiff the check before referred to, and this completed the transaction between the plaintiff and the Bank of Georgetown.

The check was not presented to the Phenix Bank for payment until January 4, 1865. The plaintiff testifies that on that day he presented the check at the bank to the president, and told him he had called to collect it; that the president, after looking at the check, said it was good, and that it would be paid on presentation by some person known to the bank; that he thereupon stated to the defendant's president that the Bank of Georgetown had transferred to him so much of its claim against the defendant as was represented by the check. The next day the check was again presented by a person known to the defendant, and the bank then refused payment, on the ground that the debt had, on the morning of that day, been seized by the United States, as forfeited under the confiscation acts of Congress. The amount standing to the credit of the Bank of Georgetown, on the books of the Phenix Bank January 4, 1865, was $12,117.38. The credit existing May 20, 1861, had been reduced by checks charged against the account, drawn by the Bank of Georgetown, after that date, and paid by the Phenix Bank; but no new deposit had been made and the Phenix Bank had no lien upon or relation to the fund remaining in its hands January 4, 1865,

except as simple depositary of the Bank of Georgetown. The defendant denied in its answer the assignment alleged in the complaint, and sought to discredit the plaintiff's testimony in respect to the purchase from the Bank of Georgetown, by introducing his testimony on a former trial, in which he made no allusion to the negotiation for the purchase of the claim, to which he testified on this trial. The defendant also controverted the plaintiff's evidence upon the point of notice to the officers of the defendant, of the transfer to him by the Bank of Georgetown, of $10,000 of its claim. But the jury found for the plaintiff upon these controverted questions and their finding is conclusive upon this appeal.

It is claimed, however, that, admitting the truth of the plaintiff's narration of the transaction with the Bank of Georgetown, it did not, in law, constitute an assignment by the bank to the plaintiff of $10,000 of the debt against the defendant, for the reasons, *first*, that the contract actually made was reduced to writing, and is represented by the check, and that oral evidence was inadmissible to show that any thing else was contemplated by the parties, except the sale and purchase of a bill of exchange, with the ordinary incidents flowing from that transaction; *second*, that there was no delivery of any account, document or writing, showing the existence or character of the debt undertaken to be assigned; and *third*, that the alleged assignment only included a part of the general fund on deposit with the defendant to the credit of the Bank of Georgetown.

We are of opinion that neither of these objections is tenable. The relation between the Phenix Bank and the Bank of Georgetown was that of debtor and creditor. The order drawn by the Bank of Georgetown upon the Phenix Bank was not a contract between the parties to this action; and as between the plaintiff and the Bank of Georgetown, the giving of the order was equally consistent with the ordinary transaction of the purchase of a draft, or the assignment of the debt against the Phenix Bank, to the amount of the order, and the taking of the order as a convenient method of enabling the plaint-

iff to collect and receive the portion of the debt assigned. The fact that the plaintiff became the owner of the debt, by agreement between him and the Bank of Georgetown, made contemporaneously with the delivery of the check, imposed no new obligation upon the defendant. The Phenix Bank was not bound to give a written acceptance of the order. Nor could it be made liable upon the check without a written acceptance. It was bound, as it had always been, to account for the fund in its possession to the Bank of Georgetown or to its assignee, and pay it over on demand of the legal owner.

In respect to the claim that there was no delivery to the plaintiff, at the time of the alleged transfer, of any account or document showing the claim intended to be assigned, it is to be observed, that the claim of the Bank of Georgetown against the Phenix Bank rested in open account on the books of the respective banks. The chose in action assigned was not a note or bond or other written obligation, the retention of which by the alleged assignor would, in most cases, be strong if not conclusive evidence that the assignment had not been completed. But an assignment of an account may be made without writing or delivery of any written statement of the claim assigned, so as to vest in the assignee a right to proceed in his own name for the recovery of the debt, provided only that the assignment is founded on a valid consideration between the parties. In *Heath* v. *Hall* (4 Taunt. 327), Lord MANSFIELD said: "If two men agree for the sale of a debt, and one of them gives the other credit in his books for the price, that may be a very good assignment in equity; its resting in parol is no objection." In *Tibbits* v. *George* (5 Ad. & El. 107) a verbal assignment of a portion of a debt was held to be good. Lord DENMAN said: "None of the authorities which have been cited show that it is necessary that the assignment should be in writing in order to pass an equitable interest, although in very many cases there was a writing." In *Crocker* v. *Whitney* (10 Mass. 316), JACKSON, J., speaking of an assignment to the plaintiff of money of the assignor in the hands of the defendant, said: "But there appears to be no reason why it may not

be as well affected by a verbal request or assignment." And in *Dunn* v. *Snell* (15 Mass. 481) it was held, that the delivery of 'an execution was a good equitable assignment of a judgment; and PARKER, C. J., said: " It is not doubted that this debt, upon which this judgment was rendered, might have been assigned in writing without seal, or even, according to the decisions, without writing."

The claim that there can be no valid assignment of a part of an entire debt or obligation is opposed to the well-settled rule in this State. (*Taylor* v. *Bates*, 5 Cow. 376; *Wheeler* v. *Wheeler*, 9 id. 34; *Pattison* v. *Hull*, id. 747; *Field* v. *The Mayor*, 6 N. Y. 179.) The point was ruled in the same way by the court of King's Bench in *Tibbits* v. *George* (*supra*). The tendency of modern decisions is in the direction of more fully protecting the equitable rights of assignees of choses in action, and the objection that to allow an assignment of part of an entire claim might subject the creditor to several actions to enforce a single obligation has much less force under a system which requires all parties in interest to be joined as parties to the action. (See note to *Morton* v. *Naylor*, 1 Hill, 585.)

We come, then, to the principal remaining question in the case, arising upon the exception of the defendant to the exclusion on the trial of the record of the District Court of the United States for the southern district of New York, offered to sustain the defense alleged in the answer that the deposit in the Phenix Bank to the credit of the Bank of Georgetown was on the 5th day of January, 1865, duly seized and attached in pursuance of proceedings instituted on that day by the United States, under the act of Congress approved August 6, 1861, entitled "An act to confiscate property used for insurrectionary purposes," and the subsequent act approved July 17, 1862, entitled "An act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes;" and that subsequently, on or about the 24th day of January, 1865, in pursuance of the decree of the court duly made the defendant paid over to the

marshal the sum of $12,117.38, the whole amount of the credit of the Bank of Georgetown with the Phenix Bank.

It appears by the record of the proceeding in the District Court, that on the 5th day of January, 1865, a *libel* of information was filed, by the attorney of the United States for the district in which the proceedings were instituted, "Against the estate, property, money, stocks, credits and effects, to wit: Against $15,000 (fifteen thousand dollars), more or less, belonging to the Bank of Georgetown, a corporation doing business in the State of South Carolina, which said $15,000 is now in cash, and is now on deposit in the Phenix Bank, a corporation doing business in the city of New York." The information — or libel of information, as it is called — alleges a seizure by the marshal on that day, by and under the authority of the president of the United States, and in obedience to the instructions of the attorney-general, and in pursuance of the acts of Congress before referred to, of "the estate and property, money, stocks, credits and effects aforesaid, to the end that the same may be confiscated, forfeited and condemned," as provided in said acts. The information then proceeds to set forth various causes of forfeiture under the acts of 1860 and 1862, viz.: *First*, that the Bank of Georgetown acquired the property seized with the intent specified in the act of 1861, and used and employed it with that intent; *second*, that the corporation, since the 17th day of July, 1862, acted as the fiscal agent of the Confederate government and of several of the States of the Confederacy, and accepted such agency from the several States after the date of the ordinances of secession of those States; *third*, that since the 17th of July, 1861, the Bank of Georgetown, while owning property in the State of New York, had given aid and comfort to the rebellion, in the ways and by the acts set forth in the information; *fourth*, that the corporation, after the passage of the act of July 17, 1862, being engaged in aiding and abetting the rebellion, did not, within sixty days after the proclamation of the president of July 25, 1862, cease therefrom. The information avers that by reason of the causes alleged, the "said property, estate and effects" were

liable to confiscation and condemnation, under the acts of
Congress, and demands judgment sentencing it to be con-
demned as confiscated and forfeited to the United States.
On the same day on which the information was filed, viz. :
January 5, 1865, a monition, so called, was issued to the mar-
shal, reciting the filing of an information against $15,000,
more or less, belonging to the Bank of Georgetown, " which
said $15,000 is now in cash, and is now on deposit in the
Phenix Bank," and directing the marshal to attach the " said
$15,000," and to give due notice to all persons claiming the
same, or knowing or having any thing to say why the same
should not be condemned, to appear before the court in which
the proceedings were taken, on the 24th day of January, 1865,
at an hour named, to interpose a claim for the same and make
their allegations in that behalf.  On the 24th of January the
marshal made his return to the monition, that he had, on the
5th day of January, 1865, attached " $13,000, more or less,
deposited in the Phenix Bank, belonging to the Bank of
Georgetown," and had given due notice as required thereby.
On the same day a decree was entered that " $12,117.38, be-
longing to the Bank of Georgetown, in the State of South
Carolina, and now on deposit in the Phœnix Bank, in the city
of New York, which said $12,117.38 has been heretofore
seized by the marshal in this proceeding, be and the same is
hereby condemned as forfeited to the United States," and di-
recting a writ of *venditioni exponas* to issue, returnable Febru-
ary 14, 1865, and that upon the return thereof the marshal
pay into the registry $12,117.38, to abide the further order of
the court.  The decree recites that it was made upon default,
and the record does not show that any proofs were taken of the
facts alleged in the information.  The *venditioni exponas* was
issued on the day the decree was entered, and on the 26th of
January, two days thereafter, the marshal returned that he had
collected from the Phenix Bank, $12,117.38, and had paid it
to the clerk of the court.  On the 27th day of January a
decree distributing the fund collected was made, awarding it
in equal parts to the United States and the informer.

We are of opinion that the record of the confiscation proceedings, if admitted in evidence, would have constituted no defense to the action. The claim of the plaintiff to the fund in question had its origin in an assignment from the Bank of Georgetown, made May 20, 1861, prior to the passage of either of the confiscation acts, under which the proceedings for forfeiture were taken; and if notice to the Phenix Bank was necessary to complete the title of the assignee, such notice, as the jury have found, was given to the bank January 4, 1865, the day prior to the seizure by the marshal. The decree of the District Court adjudges that the property seized was the property of the Bank of Georgetown, contrary to the fact as found by the verdict in this case. The question arises, whether the adjudication of the District Court concludes the plaintiff from contesting the fact that the property condemned was, at the time of the seizure and decree, the property of that corporation. If proceedings and judgment under the confiscation acts are strictly *in rem*, it would be difficult to deny the conclusiveness of the judgment in respect to every material fact adjudicated thereby. To such proceedings all persons are deemed to be parties, and persons claiming any right or interest hostile to the proceedings are bound to come in and assert such right or interest; and failing to do so, they are conclusively bound by the judgment. A judgment *in rem* operates upon the *status* of the subject-matter involved, and renders it what it declares it to be. Thus, the sentence of a court of admiralty, having jurisdiction, decreeing a ship to be a lawful prize, is conclusive as to every ground of fact upon which it proceeds, and until reversed on appeal, the facts adjudged are conclusively established thereby, as against the whole world. (*Bernardi* v. *Motteux*, Doug. 581; *Rose* v. *Himely*, 4 Cranch, 241; Broom's Leg. Max. 920; 2 Smith's Lead. Cases, 808, and cases cited.)

But as we understand the decisions of the Supreme Court of the United States in *Day* v. *Micou* (18 Wall. 156), and *Conrad* v. *Waples* (96 U. S. 279), confiscation proceedings under the acts of Congress referred to, while in the nature of

proceedings *in rem*, operate only to divest the title and interest of the party alleged to be the owner of the property seized, and as against whom the seizure is made, and that judgment of confiscation and forfeiture does not divest the title of third persons originating prior to the seizure, or of the real owner not proceeded against.

In *Day* v. *Micou*, it was held that the interest of a mortgagee under a mortgage executed in 1858 was not divested by proceedings under the confiscation act of July 17, 1862, against the owner of the land mortgaged and a sale pursuant to the judgment thereon. STRONG, J., in speaking for the majority of the court, after referring to the seventh section of the act, said : " What property is this thus brought within the jurisdiction of the District Court ? Beyond doubt the property which had been seized, that is, the estate and property of the offending person, and no other. *  *  * It is true proceedings *in rem* were ordered to be instituted in the District Court, but the question remains, what was the *res* against which the proceedings were directed ? The answer must be, that which was seized and brought within the jurisdiction of the court. A condemnation in a proceeding *in rem* does not necessarily exclude all claim to other interests than those which were seized. In admiralty cases and in revenue cases a condemnation and sale generally pass the entire title to the property condemned and sold. This is because the thing condemned is considered as the offender or the debtor, and is seized in entirety. But such is not the case in many proceedings which are *in rem*. Decrees of courts of probate or orphan courts directing sales for the payment of a decedent's debts or for distribution are proceedings *in rem*. So are sales under attachments or proceedings to foreclose a mortgage, *quasi* proceedings *in rem*, at least. But in none of these cases is any thing more sold than the estate of the decedent, or of the debtor or the mortgagor in the thing sold. The interests of others are not cut off or affected." The learned justice concludes as follows: " If then, as we hold, the property and estate of J. P. Benjamin was all that was seized, or all that could

be seized and condemned in these confiscation proceedings, those who held other interests in the land were not bound to come in and assert their claims.   Their interests did not pass to the purchaser at the sale, and they remain unaffected by the decree of condemnation and the sale thereunder."

*Conrad* v. *Waples* was ejectment — the plaintiff claiming title under a deed executed by his father, Charles M. Conrad, May 6, 1862, of lands in the city of New Orleans.   The defendant claimed title under a deed from the marshal of the United States, executed in March, 1865, upon a sale under a decree of the District Court, rendered in February of that year, condemning and forfeiting the property to the United States, as that of Charles M. Conrad, in proceedings under the confiscation act of July 17, 1862.   The plaintiff and his father, when the plaintiff's deed was executed, were engaged in the rebellion, and so continued until the close of the war.   The father was a member of the Confederate Congress, and the plaintiff was an officer in the Confederate army.   The question presented for decision was, whether the title of the plaintiff, under his deed of May 6, 1862, was divested by the decree of February, 1865, condemning and forfeiting the land as the property of Charles M. Conrad and the sale thereunder to the defendant, and the court, referring to and approving the language of Strong, J., in *Day* v. *Micou*, held that it was not, and reversed the judgment of the court below, which sustained the defendant's title. It will be noticed that in this case the land was confiscable as against the plaintiff, who, as has been stated, was an officer in the Confederate service, but having been seized and condemned as the property of Charles M. Conrad, the condemnation and sale did not, as the court decided, bar the plaintiff's title.   We understand the case to decide the principle that where the property of A., under a title originating prior to the passage of the confiscation acts, is seized, condemned and sold, in proceedings under these acts as the property of B., the title of A. is not divested thereby, although his title was derived from B., and although A.'s title was subject to confiscation, and might have

been divested by seizure and sale, in appropriate proceedings for that purpose.

The record of the District Court was not a defense to this action for another reason, viz.: The confiscation acts do not contemplate or authorize the confiscation of the property of a corporation, and no jurisdiction was acquired by the District Court to proceed for the forfeiture of the debt owing by the Phenix Bank to the Bank of Georgetown. That the property of a corporation is not confiscable under the confiscation acts, was very precisely stated in the opinion of Mr. Justice STRONG in *Planters' Bank* v. *Union Bank* (16 Wall. 496). The opinion upon this point was not, perhaps, essential to the decision made; but it cannot be supposed, in view of the importance of the subject and the frequent occasions upon which the court had been called upon to consider the scope and effect of the confiscation acts, that the remarks of Mr. Justice STRONG upon the subject, in an opinion in which the whole court concurred, were made without full consideration, or without the acquiescence of his associates. And considering the question *de novo*, I fully concur in the opinion of the learned justice upon the point stated. The title of the act of July 17, 1862, indicates that it related to the punishment of natural persons and to the confiscation of the property of individuals who were rebels, within the ordinary meaning of the term. It was " An act to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes." The first four sections of the act prescribe and regulate the punishment of persons committing treason, or engaging and assisting in the rebellion, and manifestly can have no application to corporations. Corporations cannot suffer death or be imprisoned, as a punishment for crime. The *fifth* section authorizes the seizure of the property of six classes of persons enumerated in the section : 1. Of any officer in the rebel army or navy. 2. Of the acting president and other officers of the so-called Confederate States. 3. Of the governor, members of the legislature, or judge, of any of the Confederate States. 4. Of persons who, having held any office of honor,

trust and profit in the United States, shall thereafter hold any office in the Confederate States.    5. Of persons thereafter holding any office or agency under the government of the Confederate States, or of any of the several States of the Confederacy, subject to a proviso not necessary to be stated. 6. Of persons owning property in a loyal State, etc., who shall thereafter assist, and give aid and comfort to the rebellion. The *sixth* section provides for the seizure of the property of persons who, having engaged in the rebellion, shall not cease to aid and abet the same after the expiration of sixty days, after proclamation made by the president.    The confiscation acts do not authorize the seizure and confiscation of the property of all rebels.    Under the act of August 6, 1861, it was only property acquired or used by the owner in aid of the rebellion, which was made subject to seizure and condemnation; and under the act of July 17, 1862, it was the property nly of the persons specially mentioned in the *fifth* and *sixth* sections. It is doubtless true that corporations are persons, for certain purposes, in contemplation of law; and as a general rule, in construing penal or other statutes relating to persons, corporations will be deemed to be comprehended, " when the circumstances in which they are placed are identical with those of natural persons." (*Beaston* v. *The Farmers' Bank of Delaware,* 12 Pet. 134; *United States* v. *Amedy,* 11 Wheat. 412.) But this is a rule of construction merely and yields to an indication of a contrary intention derived from a consideration of the scope and purpose of the particular statute.    We are of opinion that such indication does not exist in the confiscation acts.    The statutes of 1861 and 1862 are *in pari materia.*    They relate to the property of sentient beings possessing a will impelled by motives, and capable of forming an intent.    As said by STRONG, J.: " Both of these acts had in view property of natural persons who were public enemies, of persons who gave aid and comfort to the rebellion, or who held office under the Confederate Government, or under one of the States composing it."

The District Court, upon this construction of the confisca-

tion acts, in directing the seizure and decreeing the confiscation of the property of the Bank of Georgetown, acted wholly outside of its jurisdiction, and the entire proceedings, including the seizure, condemnation and distribution, were void, and constituted no justification to the defendant in paying over the fund to the marshal. The acts did not confer upon the District Court general jurisdiction to seize and confiscate enemies' property. It had no jurisdiction whatever to seize and condemn the property of corporations, but of natural persons only. That the case was not one within the jurisdiction of that court appeared upon the very inception of the proceedings. The information disclosed that the property proceeded against was the property of a corporation; the mandate of the court directed its seizure as the property of a corporation; and it was declared to be the property of a corporation in the final sentence of condemnation. Where a court has jurisdiction, it has a right to decide every question which occurs in the cause (*Elliott* v. *Peirsol*, 1 Peters, 328), and an erroneous ruling or decision, in the course of the proceedings, does not render its judgment void; but a court authorized by statute to entertain jurisdiction in a particular case only, if it undertakes to exercise the power and jurisdiction conferred in a case to which the statute has no application, acquires no jurisdiction, and its judgment is a nullity, and will so be treated when it comes in question, either directly or collaterally. (*State of Rhode Island* v. *Comm. of Massachusetts*, 12 Peters, 657; *Wilcox* v. *Jackson*, 13 id. 511; *Thompson* v. *Whitman*, 18 Wall. 457; *The Confiscation Cases* [STRONG, J.], 20 id. 107; *Chemung Canal Bank* v. *Judson*, 8 N. Y. 254.)

The trial judge rejected the record of the District Court on the ground that the proceeding was against specific money, and not against the debt or credit of the Bank of Georgetown with the Phenix Bank, and that the credit was not forfeited or affected by the proceedings. We deem it unnecessary to consider this particular ground of objection to the record, for the reason that the other grounds considered sustain the ruling of the court in refusing to admit the record in evidence.

The plaintiff's letter to the defendant's president, of the 5th of February, 1865, was not, we think, material to any issue in the case. It would not, if admitted, have thrown any light upon the question whether the plaintiff's transaction with the Bank of Georgetown was a purchase of the debt, or on the question of notice to the defendant.

We think the judgment should be affirmed.

All concur.

Judgment affirmed.