(Superior Court of Cincinnati—General-Term.)

JAMES N. GAMBLE and DAVID B. GAMBLE v. JOHN CARLISLE et al.

---

Construction of language of various orders of assignment of a fund.—Assignments of choses in action need not be in writing.— Necessity for notice of assignment by assignee to debtor.—When an order drawn upon a third person payable out of a particular fund and accepted, is an assignment pro tanto of the fund, and when it creates only a personal liability on the part of the acceptor.—Partial assignments of debts will be protected and enforced.

SMITH, J., HUNT and MOORE, JJ., concur.

Under the above title two suits have been consolidated into one and reserved from Special Term upon a bill of evidence. The suits are by creditors of the Great Western Mining & Manufacturing Company to enforce alleged liens upon the sum due to that company from the defendant, the Cincinnati, Hamilton & Dayton Railroad Company, on an account for coal. A large number of persons and corporations are made parties defendant as claiming liens upon the fund. They have filed answers and cross-petitions, and the case is submitted for a decree determining, first, the amount of money which is or ought to be in the hands of the Cincinnati, Hamilton & Dayton R. R. Co., and, second, which, if any, of the parties have liens upon the fund, and the order of their priority. The plaintiffs and many of the defendants claim liens by virtue of assignments of portions of the fund alleged to have been executed to them by the Mining Company; others of the defendants claim liens by virtue of attachments against the Mining Company, under which the C. H. & D. R. R. Co. was garnisheed.

As to the first question, viz, the amount of money which is or should be in the hands of the C., H. & D. R. R. Co., on account of coal furnished it by the Great Western Mining & Manufacturing Company:

The C., H. & D. R. R. Co. admits that it is indebted to the Mining Company in the sum of $3,471.86 and makes no objection to the distribution of this amount among the parties to this suit in whatever order and in whatever amounts the court shall decree, but denies that it is indebted in any larger sum than the one admitted to be due.

The parties interested, however, dispute the correctness of the statement of the C., H. & D. as to the amount due the Mining Company, and contend that the fund should be increased (1), by $1,070, the amount of switching charges paid without authority or right by the C., H. & D. R. R. Co. to the C., C., C. & St. L. Railway Company in order to get the coal from the latter company, and (2), by the sum of $3,000 paid by the C., H. & D. R. R. Co. to the Mining Company on August 29, 1892, upon the ground that the payment was wrongful in view of prior notices of assignments claimed to have been given to the C., H. & D. R. R. Co.

As to the switching charges the facts are correctly stated by counsel for the C., H. & D. R. R. Co., in his brief, as follows: "The contract between the C., H. & D. R. R. Co. and the Mining Company, which is in writing, required the coal to be delivered to the C., H. & D., on its tracks. The coal was shipped to the Mining Company over the C. & O. Railroad, but could not reach the tracks of the C., H. & D. without being carried from the C. & O. to the C., H. & D. by the C., C., C. & St. L. Railway Company, to which company the coal was accordingly delivered by the C. & O. for transportation to the C., H. & D. When the coal reached the C., H & D, it was subject to the lien of the C.,C.,C & St. L. Railway for its switching charges, which had not been paid, and of course the C., H. & D. could not get the coal without paying those charges This it did, charging the amount so paid to the Mining Company."

From this statement of facts it seems to us that it requires no argument to justify the action of the C., H. & D. in charging these payments in its account with the Mining Company.

The next question is whether the C., H. & D. R. R. Co. is liable to any of the parties, and if so, to which of them, for having paid $3,000 to the Mining Company on August 29, 1892?

The $3,000 so paid was on account of coal delivered during August. The receipt given for the payment so specifies, and is as follows:

Cincinnati, O., August 29, 1892.

Received of F. H. Short, Treasurer, three thousand dollars on account of coal delivered during the month of August. $3,000.

Great Western Mining & M'f'g Co.
John Carlisle, Treasurer.

Unless the evidence discloses an assignment of the August account, no one can be heard to complain of this payment. We turn our attention first, therefore, to the consideration of this question.

In determining the proper construction of the assignments, it should be borne in mind that the Mining Company was engaged in delivering coal to the C., H. & D. R. R. Co., but that by the arrangement between the parties, settlement and payment was only had at the end of monthly periods.

Taking the assignments in the order in which they are dated:

The Volksblatt order is dated May 12, 1892, and is to "Give John Carlisle or order, May the 28th for coal delivered by the G. W. M. & M. Co., $3,000," and necessarily implies an assignment of the money due for coal delivered prior to May 28th. This order, therefore, could not affect the right of the C., H. & D. R. R. Co. to pay to the Mining Company any or all money due for coal delivered in August.

The order of James N. Gamble and David B. Gamble is dated May 12th, 1892, and is to "Give John Carlisle or order on June 10, for coal furnished by the Great Western Mining & M'f'g Co., $3,000," and necessarily implies the assignment of a debt for coal delivered prior to June 10th. It therefore did not affect the right of the C., H. & D. R. R. Co. to pay to the Mining Company any money due for coal furnished in August.

The order of James N. Gamble, David B. Gamble and William A. Gamble, executors, is dated July 5th, 1892, and is for "coal supplied during the month of July, 1892" It plainly has no connection with coal delivered in August.

The order of James M. Glenn is dated July 28, 1892, and is to "pay to the order of James M. Glenn $2,500 out of proceeds due Great Western Mining & M'f'g Co. for coal delivered to the C., H. & D. R. R. Co., and you are authorized to deduct this from the total amount due us when you settle."

It will be observed that the language of this order confines it to "proceeds due" and to "coal delivered," and does not extend to proceeds to become due or to coal to be delivered.

The circumstances surrounding the giving of the order confirm this construction. In his testimony upon that subject Mr. Glenn says:

"Mr. Carlisle came to me on the 28th day of July, which was the day upon which the note fell due, and to my astonishment announced he could not pay the note because he could not collect on his coal vouchers at the C., H. & D. R. R. He said that the money was due him for coal, but there were differences pending awaiting settlement. I told him to give me an order on the C., H. & D., which he did."

Mr. Glenn further testifies that after taking the order to Mr. Short, and finding that there was no money due Carlisle at that time from the C., H. & D. R. R. Co., that he returned to Carlisle, and in the course of a conversation then held, with Carlisle, it was agreed that the order should apply to future as well as past deliveries of coal.

It is not necessary to consider here what the effect of this subsequent arrangement was, because no notice of it was given to Short. So far as the C., H. & D. R. R. Co. was concerned it was bound to observe only the terms of the written order, which did not relate to future deliveries of coal, and therefore could not affect the right of the Railroad Company to pay to the Mining Company any money due said company for coal furnished in August.

The order of the Fourth National Bank was dated July 29, 1892, and directs F. H. Short, Treasurer, to "pay M. M. White, President Fourth National Bank, $2,500 out of the first money due Great Western Mining & Manufacturing Company for coal delivered to C., H. & D. R. R. Co."

It seems to us that the natural conclusion to be drawn from the language of this order is that it relates to money due for coal that had already been delivered at, the time it was drawn, but for which the money was not yet due.

The circumstances surrounding the order confirm this construction.

In the first place it is hardly probable that a bank would be satisfied with an order as collateral security which had no effect at the time it was given as collateral security, but was to operate only in the event of futuer deliveries of coal, which would be uncertain as to amount and time of delivery.

The conduct of both the president of the Fourth National Bank and Short is confirmatory of this construction of the order. The testimony of the president as to what occurred when he presented the order to Short is as follows:

Q. What did Mr. Short say?

A. Mr. Short read the order over, and after a little hesitation remarked: "I cannot pay this order to-day for the reason that I am not sure we are owing the Great Western Mining & Manufacturing Co. $2,500."

Q. What, in substance, did he say about the payment of it?

A. Mr. Short said: "If you will leave this with me" (and he put it in an envelope) "we will pay this, provided we owe that company $2,500." I thereupon asked him if he would pay if there was a balance due, whether the amount was $2,500 or not at that time.

Mr. White subsequently says that "as the $2,500 was so indefinite," he pressed Carlisle for further security, which was given him.

We fail to find in any of the conversations between Mr. White and Mr. Short any intimation that either one regarded the order as applicable to coal which had not yet been delivered.

In view of the language of the order and the surrounding circumstances, we are of the opinion that the order of the Fourth National Bank applied only to money due for coal delivered prior to July 29, 1892, and had no reference to money due for coal delivered in August, 1892.

The Lafayette Bank makes no claim to money due for coal delivered in August. The order on its face declares that it is for coal furnished in September. The order of the Second National Bank of Ashland was not given until September 6th; and none of the attaching creditors began their proceedings in attachment until September.

It appears from the foregoing examination of the dates and language of the written orders of assignment, and the dates of the attachment proceedings, that the C., H. & D. R. R. Co. is not called upon to account to any of the parties in this action for the payment on August 29, of $3,000, to the Great Western Mining & Manufacturing Company. The amount in its hands subject to distribution is $3,471.86, of which amount $1,440.55 is for August coal, and $2,031.31 for September coal.

It appears from the foregoing examination of the dates and language of the orders of assignment that none of them affect the amount of money due for coal furnished in August, unless the subsequent oral arrangement between Mr. Glenn and Mr. Carlisle can be given that effect. We have previously seen that the order of Mr. Glenn was dated July 28, 1892, and was to "pay to the order of James M. Glenn $2,500 out of the proceeds due Great Western Mining & Manufacturing Company for coal delivered to the C., H. & D. R. R. Co., and you are authorized to deduct this from the total amount due us when you settle."

It also appears from the evidence that upon presentation of the order by Mr. Glenn to Mr. Short, and his discovery of the fact that Mr. Short was unable to pay him

anything on account of "differences pending awaiting settlement," that he immediately returned to Mr. Carlisle and acquainted him with the 'situation. Mr. Glenn testifies: "Mr. Carlisle then said to me there was a controversy that Mr. W. had brought up, claiming prices back since the expiration of the old contract should be made at new prices, which were lower than the old contract had been at, and that would force or cause a difference in the amount to his credit for the past two or three months' delivery. Carlisle also said that the C., H. & D. R. R. had paid full price to the C. & O. R. R. for transportation of this coal, while he had a private contract with the C. & O. R. R. at seventy-five cents per ton; that he was delivering coal daily to the C., H. & D. R. R., and there would soon be plenty of money to pay my claim."

Q. I will ask you whether he said anything to you in reference to the order applying to moneys subsequently to fall due, as well as money then due, at the time the order was given?

A. He said, right then and there, that the order was given for coal for money that would accumulate there from daily shipments of coal.

An assignment by a creditor of a chose in action need not be in writing. If the evidence shows an intention upon the part of the creditor and his assignee to assign to such assignee the interest of the creditor, and that intention is manifested by proper language, the assignment is good. And we are of the opinion that the force and effect of this subsequent conversation was in equity an assignment of future accumulations which would become due, and therefore covers the amount due for August coal, viz.: $1,440.55; but inasmuch as no notice of this subsequent assignment was given to Short, it could not apply to the accumulations for September coal, if any assignment was subsequently made with reference to such accumulations, and notice given to and accepted by the C., H. & D. R. R. Co. The rule requiring the assignee of a chose in action to give notice to the debtor in order to protect himself against subsequent bona fide purchasers is not everywhere accepted, but we believe the weight of authority supports the rule. Darrell v. Hall, 3 Russell 48; Ames on rTusts, 327. And that, so far as our Supreme Court has given any intimation upon the question, it will support the rule. Copeland et al. v. Manton, 22 Ohio St. 401. It is contended by the Lafayette Bank that it has such an assignment of the money due for coal furnished in September.

It appears from the evidence that on August 29th, 1892, Mr. Carlisle borrowed from the Lafayette Bank $3,000, giving them a draft with the memorandum attached as follows:

$3,000.00.      Cincinnati, Aug. 29, 1892.

Acceptance waived.

Sixty days after date, pay to the order of John Carlisle three thousand —100 dollars on act. coal supplied in September.

Value received, and charge the same to account of

     Gt. Western Mining & M'fg Co.

         By John Carlisle, Treas.

To F. H. Short, Treas. Cin., Ham. & Dayton R. R.

Endorsed: John Carlisle.

       ∴ Protested Oct. 31, '92.

Cincinnati, Hamilton & Dayton R. Co. ⎫
     Office of Secretary and Treasurer, ⎬
       200 West Fourth Street. ⎭

     Cincinnati, O., Aug. 29, 1892.

F. H. Short, Secretary and Treasurer:

I hereby agree to retain out of the monies that may be due the Great Western Mining & M'f'g Co., for coal furnished this company during the month of September, 1892, after payment of all freight and switching charges and acceptance of twenty-five hundred dollars of prior date, the sum of three thousand dollars, which amount, or any portion thereof which may be due said company after above payments are made, will be applied to paying a draft of John Carlisle, Treasurer of said Great Western Mining and M'f'g Co., for $3,000, drawn payable on the 31st day of October, 1892, with this certificate attached.

         F. H. Short, Treasurer.

Approved: M. D. Woodford, Pres't.

It is sometimes difficult to determine whether an order drawn upon a third person payable out of a particular fund is an assignment in whole or pro tanto of the fund, as the case may be, or is merely a draft which has no effect until accepted, and when accepted does not assign any particular fund, but creates only a personal liability upon the part of the acceptor.

The distinction is well stated in Brill v. Tuttle, 81 N. Y., 454, where it is said: "There can be no doubt as to the rule that when, for a valuable consideration, from the payee, an order is drawn upon a third party and made payable out of a particular fund then due cr to become due from him to the drawee the delivery of the order to the payee operates as an assignment pro tanto of the fund, and the drawee is bound, after notice of such assignment, to apply the fund as it accrues to the payment of the order, and to their purpose, and the payee may, by action, compel such application. It is equally well established that if a draft be drawn generally upon the drawee. to be paid by him in the first instance, on the credit of the drawee, and without regard to the source from which the money used for its payment is obtained, the designation by the drawee of a particular fund out of which the drawee is to subsequently reimburse himself for such payment or a particular account to which it is to be charged, will not convert the draft into an assignment of the fund, and the payee of the draft can have no action thereon against the drawee, unless he

·accepts. In all cases, therefore, in which a particular fund to accrue in future, is designated in the draft, and the language is ambiguous, the turning point is whether it was the intention of the parties that the payment should be made only out of a designated fund, when, or as it should accrue, or whether the direction to the drawee to pay was intended to be absolute, and the fund was mentioned only as a source of reimbursement, or an instruction as to book-keeping.'' Canan v. Little, 40 Ohio St., 397; Oakes v. Oram, 43 Legal Intelligencer, 520.

Measured by the above standard, the order of the Lafayette Bank in itself was not an assignment which would entitle the bank to a part of any fund, but is a draft which, at the most, upon an acceptance, might create a personal liability.

But by the memorandum attached to the draft and given above it appears that Mr. Short agrees to retain, out of the money due for coal furnished in September, a sufficient amount to pay the draft, after certain other payments are made, out of such money. This memorandum was delivered by Mr. Carlisle to the Lafyette Bank at the time he borrowed the money from them, and was therefore consented to by Carlisle. We think, under the circumstances, it must be construed as an assignment of the September money in favor of the bank, and the C.. H. & D. R. R. Co. having notice of the same, it must take priority over the assignment to Mr. Glenn, to which we have previously referred.

It will be observed, however, that the memorandum specifies that the Lafayette Bank is to be paid "after payments of all freight and switching or advance charges, and an acceptance of twenty-five hundred ·dollars of prior date.''

It is claimed by the Fourth National Bank that the prior acceptance referred to is the ·order of assignment upon which it bases its claim in this case. On the other hand Mr. ·Short testifies that it was an acceptance in favor of the Fourth National Bank in all respects similar to that of the Lafayette Bank. But no such acceptance thus far has been introduced in evidence. Mr. Short says that if no such acceptance is in existence, it must have been paid by Mr. Carlisle. As Mr. Carlisle has not testified upon this subject, and the books of the Fourth National Bank have not been introduced in evidence, we are not willing to make a finding of fact upon this question without at least an effort to obtain further light upon it.

The case will therefore be remanded to Special Term, for the purpose of taking upon this question of fact such additional testimony as may be obtainable, and if necessary ·of re-examining the witnesses upon this point who have heretofore testified.

If it shall be found that the prior acceptance referred to in the memorandum of the Lafayette Bank has been paid, the amount due for September coal will belong to the Lafayette Bank; if, however, it shall be found that the acceptance referred to belongs to the Fourth National Bank, and in

either whole or in part has not been paid, then the legal question will have to be determined as to whether this memorandum delivered to the Lafayette Bank, under the circumstances, can be regarded as also an assignment to the Fourth National Bank; but until the question of fact previously referred to has been decided, any discussion of this legal question would be premature.

The assignment to Mr. Glenn having consumed the balance in the hands of the C., H. & D. R. R. Co. for August coal, and the balance for the September coal having been consumed by the assignment to the Lafayette Bank, nothing remained in the hands of the C., H. & D. R. R. Co., which could be applied to the debts of Carlisle or the Great Western Mining Company at the time the porceedings in attachment were begun, unless, as is contended by counsel, the assignment being only partial assignments, never became operative because not assented to by the C., H. & D. R. R. Co., the debtor.

Unquestionably authorities can be found to the effect that a debtor is not bound to recognize an order or attachment of a part of his debt. But whatever the rule may now be at law, in regard to which we express no opinion, we regard it as well settled in equity that partial assignments of a debt will be protected**and enforced in equity, and that in this case the assignments are quite as good as if they had purported to assign the entire amount in the debtor's hands. Ames' Cases on Trusts, page 64; Trust v. Child, 21 Wallace, 441, 447; Stanberry v. Smythe, 13 Ohio St. 495; Peugh v. Porter, 112 U. S. 737; Brill v. Tuttle, 81 N. Y., 454; Risley v. The Bank, 83 N. Y., 318; Daniels v. Meinhard, 53 Ga. 353; James v. City of Newton, 142 Mass., 366; and cases cited; Caldwell v. Hartupwee, 70 Penn.,74.

There is nothing therefore, in this case for attaching creditors.

The case will be remanded to the Special Term, where a judgment will be entered in accordance with the findings of fact and law indicated in this opinion and for further determination as to the rights of the Lafayette Bank and the Fourth National Bank in the money due for September coal.

Joseph Wilby, or Gambles; Lawrence Maxwell, for C., H. & D. R. R. Co. ; Drausin Wulsin, for Volksblatt Co. ; C. P. Wilby, for Fourth National Bank; Thornton M. Hinkle, for Lafayette Bank; Wm. C. Herron, for James M. Glenn; C. W. Baker, Peck & Shaffer, for attaching creditors.

---

(Muskingum Co. Court of Common Pleas.)