Richardson, J.,
delivered the opinion of the court:
This action is brought to recover seven thousand four hundred dollars paid by the claimant, as he alleges in his petition:
“For real estate sold to him by said defendant (the United States) at judicial sales and deeded to him, his heirs and assigns forever, but which real estate has since been adjudged not to have belonged to said vendor at the time of the sale and the giving of said title deeds, and the petitioner has thus been deprived of said real estate.”
He avers in his petition—
“That in the contracts of sale by which the petitioner had, in good faith, bought said properties and paid therefor, the United States impliedly contracted to repay to the petitioner the price which said United States received, in case the title to said properties should not prove valid and the petitioner should be evicted by reason of said vendor’s want of right and title to convey said lands to the purchaser, and that therefore the sum of $7,400 is justly due and owing by said United States to the petitioner.”
The findings show that the claimant purchased at public auction, under a judicial decree of the district court of the eastern district of Louisiana, the title to certain real estate which had been seized as the property of Charles M. Conrad, and condemned as forfeited to the United States under the Confiscation Act July 17, 1862 (12 Stat L., p. 589, ch. 195), and the joint resolution of the same date, No. 65 (12 Stat. L., 627), giving a legislative construction to its language; that he paid the consideration, and that^the marshal executed and delivered to him deeds of the property.
The first question that arises is, What was the title which the claimant bargained for and which the marshal undertook to convey to him 1
The claimant alleges that it was the absolute fee-simple of the real estate to him and his heirs and assigns forever. To support that allegation he relies upon the language in each of the marshal’s deeds, which, after reference to the previous proceedings of the court, &c., is as follows:
“Now, therefore, know all men by these presents that I, the U. S. marshal aforesaid, in consideration of the premises and by virtue of the laws in such case made and provided, and under the authority of the acts of Congress of 6th August, 1861, *153 tbe 17tb July, 1862, and tbe 3d March, 1863, in relation to confiscation, do hereby sell, transfer, assign, and set over unto the said Eufus Waples as aforesaid, his heirs, administrators, and assigns, all and singular the above-described property, with all the buildings and improvements thereon, rights, ways, privileges, hereditaments, and appurtenances to the same belonging and in anywise appertaining. To have and to hold the above-described property, with all the buildings and improvements thereon, rights, ways, &c., &c., as aforesaid, unto the said Eufus Waples, his heirs and assigns as aforesaid, to his and their proper use, benefit, and behoof forever.”
He also relies upon some language in the information for forfeiture and in the subsequent proceedings of the court, which he construes as referring to a fee-simple estate in the property as the thing to which all the proceedings from beginning to the end relate.
Notwithstanding that language it is clear enough, taking the whole record together, in connection with the repeated decisions of the Supreme Court, that it was the estate of Charles M. Conrad only which the United States proceeded against for acts done by him in violation of the confiscation act.
That it was not necessarily for the whole fee of the property which was seized and condemned is established by the decision of the Supreme Court in Day v. Micou (18 Wall., 156). There the court held in a like case that “ those who hold other interests in the land were not bound to come in and asserttheir claims. Their interests did not pass to the purchaser at the sale, and they remain unaffected by the decree of condemnation and sale thereunder.
The information did not apply to the property independently of ownership. It applied to the title and estate of the offender, whatever that might appear to be. Its force and effect could not be enlarged by the loose and unguarded language incorporated into the subsequent orders, decrees, and deeds. The court had no power to condemn anything more than the estate of Charles M. Conrad, and the marshal had no authority to offer for sale, to bargain, or to convey any other estate.
Nor was it the whole fee-simple of Charles M. Conrad’s estate in the property of which the statute authorized the condemnation, forfeiture, and sale. In the language of the Supreme Court, construing the statute, it was only “ a right to the property seized, terminating with the life estate of the person for *154 whose act it had been seized,” that could be confiscated and sold.
In the case of Bigelow v. Forrest (9 Wall., 350), the construction of the Confiscation Act is thus authoritatively established. The court say:
“The fifth section of the Confiscation Act of July 17, 1862, enacted that it should be the duty of the President of the United States to cause the seizure of all the estate and property, moneys, stocks, credit, and effects of certain persons described in six classes, and to apply and use the same, and the proceeds thereof, for the support of the Army. To one or more of these classes, French Forrest [whose estate had been seized], belonged. * * * Concurrently with the passage of this act, Congress also adopted a joint resolution explanatory of it, whereby it was resolved that no punishment or proceedings under the act should be so construed as to work a forfeiture of the real estate of the offender beyond his natural life. It is a well-known fact in our political history that the resolution was adopted in consequence of doubts which the President entertained respecting the power of Congress to prescribe a forfeiture of longer duration than the life of the offender. Be this as it may, the act and the resolution are to be construed together, and they admit of no doubt that all which could, under the law, become the property of the United States, or could be sold by virtue of a decree of condemnation and order of sale, was a right of property seized, terminating with the life of the person for whose act it had been seized. It follows, then, that the estate acquired by the purchaser at the marshal’s sale expired on the 24th day of November, 1866, when French Forrest died. * * *
“ The proceeding was required by the act of Congress to be in rem, and the decree condemned, not the estate of French Forrest, but, using its own words, “the real property mentioned and described in the libel.” The marshal was ordered to sell the said property, the boundaries of which were given in the title to the decree. Had the purchasers looked at that decree (and knowledge of it must be attributed to them) they would have seen that it was a decree of confiscation of the land, and they were bound to know its legal effect.”
The principles of law thus laid down have been reaffirmed in Day v. Micou (18 Wall., 146), in Exparte Lange (18 Wall., 163), in the Confiscation Cases (20 Wall., 92-116), in Conrad v. Waples (96 U. S.R., 279), and in Burbank v. Conrad (96 U. S. R., 291).
It will be noticed that in Bigelow v. Forrest the court held the purchaser to constructive notice that the sale of the real estate by the marshal was a sale under a decree of confiscation, and *155 they also beld that the purchaser was bound to know the legal effect of the decree, limiting the sale and conveyance to an estate for the life of the offender only. So in Burbank v. Conrad (96 U. S. R., 298), the court said:
“The plaintiff had notice of the character and legal effect of the decree of condemnation when he purchased, and is therefore presumed to have known that if the alleged offender possessed no estate in the premises at the time of seizure nothing passed to the United States by the decree or to him by his purchase.”
The present case is stronger. The claimant is not left to constructive notice alone. The findings show conclusively that he had actual personal knowledge of every step in the proceedings. He was the United States district attorney who drew up, signed, and filed in the court the information for forfeiture. On his motion a default was entered against persons who had not made an appearance. On his motion, also, the case was set down for hearing, and he appeared for the libellants in the trial.
Moreover, the deeds themselves, which were given to him by the marshal, set forth explicitly that the sales were under and by virtue of the Confiscation Act; and that circumstance constitutes actual written notice of the fact to him and to all persons who should claim under those deeds.
Thus the claimant’s allegation that he bargained for and bought, and that the United States sold or intended to sell to him a fee-simple estate in the property, is not sustained by the findings of fact. On the contrary, it appears that he bought only an estate in the property for and during the natural life of Charles M. Conrad.
The learned counsel for the claimant made an exhaustive argument, supported by all the authorities on the subject, to show, by the common law as practiced in the several States, and especially by the law of Louisana, where these sales took place, that in the sale of real estate there arises an implied warranty of title, failing which the purchaser may recover back the purchase money paid by him.
We are not prepared to hold that such a warranty on the part of the United States is implied in a sale of real estate by vir - tue of a judicial decree under the Confiscation Act. We do not deem it necessary to review the decisions on the subject of warranty or to express any opinion upon this point, because, according to our view, if there were any warranty implied in this case *156 it was at most a warranty of an estate for tbe life of Charles M. Conrad, and nothing more.
Unless, then, the claimant has shown that he was deprived of the possession, use, and enjoyment of the estate during the lifetime of Charles M. Conrad, or has otherwise suffered damages, there is no breach of warranty, even if it is implied and exists on the part of the United States, as was contended.
To support the allegation in his petition, that he has been deprived of his estate by an adjudication that it did not belong to his vendors at the time of sale, he produces and proves the record of proceedings in an action of ejectment brought against him in the circuit court, fifth circuit and district of Louisana, by Lawrence L. Conrad, son of Charles M. Conrad, who claimed to be sole owner of the land under a deed alleged to have been made, executed, and delivered to him by his father May 6, 1862, for a valuable consideration then passing between them. The plaintiff in that action also claimed of the defendant the sum of sixty thousand dollars for past rents and profits and six thousand dollars a year for rents and profits so long thereafter as said Waples should continue in possession of the premises.
When that case came on for trial in the circuit court in May, 1875, the plaintiff offered in evidence the deed from his father referred to in his petition, to which several objections were offered by the defendant, growing out of the connection of the parties with the rebellion at the time of the execution of the deed. The court sustained the objections, ruled the deed to be inadmissible, and judgment was given for the defendant.
Upon a writ of error the Supreme Court reversed the judgment of the circuit court March 25, 1878, and remanded the case for a new trial. (Conrad v. Waples, 96 U. S. R., 279.)
It is evident that this decision of the Supreme Court did not necessarily dispose of all objections to the title of the younger Conrad, which might be made successfully or unsuccessfully, when the deed should be admitted in evidence upon a new trial. The defendant in that action and the United States, if their rights and interest were to be affected, might still make any other objections and demand that they should be judicially determined.
The findings disclose, by the records of courts which were put in by the present claimant, the remarkable facts that, notwithstanding the deed to his son in 1862, the elder Conrad *157 claimed title to tbe property until 1874; that after the sale of the estate under the decree of confiscation in the district court, he brought a writ of error in the circuit court to set aside the decree; that having been unsuccessful there, the case was taken to the Supreme Court on review, and by that court of last resort the decree of the circuit court was set aside and that of the district court was affirmed, thus establishing the validity of the forfeiture as against him and against whatever estate he had in the property. This final judgment of the Supreme Court was rendered May 4, 1874.
It was not until the 26th of the next month, June, 1874, after the efforts of the elder Conrad to avoid the decree of confiscation had been exhausted, that the younger Conrad instituted his action of ejectment, claiming a fee-simple title in himself to all the property under the deed of 1862. The plaintiff’s petition in that action was signed by “C. M. Conrad & Son,” as attorneys.
Dp to that time it does not appear that the younger Conrad had ever claimed the property under his deed.
After the order of the Supreme Court granting a new trial, the ease came to a final hearing in the circuit court May 22,1878. The elder Conrad had been dead three months. The estate for the life of Conrad, which had been conveyed to the defendant in that action, Mr. Waples, the present claimant, had come to an end; and he then had no right to hold possession of the property any longer under the conveyances made to him .by the marshal. He had, therefore, no further interest in resisting the claim of the younger Conrad to the estates, and there was no party to the case who had any pretense of title to the property at that time as against the demandant therein. The only interest which the present claimant had in making any further defense was to protect himself from judgment for damages for mesne profits. In that he was successful. The judgment of the court was in favor of the demandant for the property, with nominal damages only against the defendant.
The Dnited States were not parties to that action; were not notified of its pendency, and were not cited in to defend the title of the present claimant.
They could not have been compelled to become parties, since the Dnited States cannot be made defendants to actions except in this court, but they might have voluntarily defended the *158 suit, and they certainly were entitled to notice and an opportunity to defend if the suit was to fix any fact as against them.
But if the United States were bound by such a judgment thus obtained, they would still be liable under their supposed warranty only to the extent to which the claimant shows that he was injured by the judgment.
The findings show that he suffered nothing by the judgment. He was not ousted of the possession, use, and enjoyment of the property until three months after his estate therein had terminated, and no damages for rents and profits during the time of his occupancy have been awarded against him. If it be claimed that he might be still liable for rents and profits in an independent action, we apprehend that, as between the younger Conrad and Waples, the entire claim for mesne profits has been adjudicated by the verdict of the jury and the judgment of court for nominal damages. That claim was put in issue and tried in the action of ejectment.
The counsel for the claimant, while pressing the case upon the ground of an implied covenant of warranty peculiar to the law of Louisiana, have also rested it upon a more general principle. They have argued that it was money paid in mutual mistake of fact for something which both parties supposed to exist, but which really did not exist, and that their client may sue for and recover back the purchase money so paid as money held to his use by the defendants.
Whether the case does come within the principle established by the Supreme Court in Allen v. Hammond (11 Peters, 63), where it is held that if a life estate in land be sold, and at the time of the sale the estate is terminated by the death of the person in whom the right vested, a court of equity would rescind the purchase, and whether it comes within the decision of the Supreme Court of New York in Gardiner v. The Mayor (26 Barb., 423) it is not necessary for us to determine.
If this case could be maintained upon the principles of those cases and others like them; if a person who purchased a life estate (as this claimant must be held to have done), and who was put in possession thereof by the vendor, and who continued in possession during the continuance of the life estate, though subjected to litigation concerning his title — if he can come into court and recover back the whole of the purchase money on the ground that he paid it in mutual mistake of fact, and that the *159 defendant, in equity and good conscience, ought not to retain it (upon which point we express no opinion), it is, nevertheless, manifest that such a claimant must establish at the very threshold of his case the fact that the life estate did not exist.
It is likewise manifest that this fundamental fact is one upon which the defendants have the right to join issue, and that there can be no issue in the case which they will have a greater interest in contesting and disproving.
No such right has been accorded to the defendants by the claimant in the present case; for he relies upon a judgment recovered by a third person against himself as being obligatory upon the defendants here.
We do not so regard it, and are of the opinion that the judgment does not establish the alleged fact of there being at the time of the sale no estate or interest in the property vested in Charles M. Conrad.
To recapitulate. The claimant’s case, stated concisely, is this: The defendants bargained, sold, and conveyed to the claimant an estate in certain lands, which, in legal effect, was an estate for the life of Charles M. Conrad. The claimant entered into immediate possession of the property, and held, used, and enjoyed it for thirteen years, and until the term of the estate sold to him terminated by the death of the said Conrad and for three months beyond that time. Nine years after the claimant took possession of the estate the son of said Conrad brought an action against. the claimant to recover possession of the property on the ground of prior title, and in that action, after the termination of the claimant’s estate, he recovered judgment for possession and for nominal damages.
If, upon these facts, it be held that a fatal defect existed in the title of the estate conveyed to the claimant, he has not shown that he has suffered injury thereby beyond the judgment against him for nominal damages, and that is damnum absque injuria, for which he is not entitled to a judgment in this court.
The judgment of the court is that the claimant’s petition be dismissed.