GARVAN, Alien Property Custodian, v. COMMERCIAL TRUST CO. OF N. J.

(District Court, D. New Jersey. October 22, 1921.)

1. War ⊂═⇒12—Alien Property Custodian's determination as to enemy property is conclusive.

Under Trading with the Enemy Act, §§ 5a, 6, 7a, 7c, 7d, 7e (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½c–3115½d), the Alien Property Custodian, as the representative of the President, has authority to determine, after investigation, whether property is held for or on behalf of an enemy, and to insist that such property be turned over to him, if held for an enemy, and one holding such property will be fully protected on compliance with the Custodian's demands.

2. War ⊂═⇒12—That preliminary investigation whether owner was alien enemy was not made cannot be urged in suit to enforce Custodian's demands.

The objection that the preliminary investigation required by Trading with the Enemy Act, § 7c (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), was not made by Alien Property Custodian before demanding property from the holder thereof, cannot be made in a proceeding to enforce the Custodian's demands instituted under section 17 of the act (section 3115½i), where the Custodian's determination and demands as to such property positively asserted that such investigation was made.

3. War ⊂═⇒12—Property held in trust for joint account must be delivered, if either cestui an alien enemy.

Where a trust company held securities under a trust agreement "for the joint account" of W. and S. and was obligated to pay over such securities and interest "to either the said" W. or S., or "to the survivor of them," the trust company, on demand for the property by the Alien Property Custodian under Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½a et seq.), could not base a defense on the claim that S., who alone had been determined to be an alien enemy not holding a license from the President, owned at most but a part of the property, as it was bound to deliver the property to either W. or S. on demand, so that, if either was an enemy, the Alien Property Custodian, by taking the requisite steps under the act, would be substituted in the place of the enemy and entitled to demand and recover the trust fund.

4. War ⊂═⇒12—Claims to property cannot be litigated in Alien Property Custodian's suit for possession thereof.

In Alien Property Custodian's suit for possession of alleged enemy property under Trading with the Enemy Act, § 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½i), questions as to title or interest in the property cannot be determined, but can be raised only by filing a claim and instituting the proceeding as provided by section 9 (section 3115½e).

5. War ⊂═⇒12—Report of holder of property held to show property was held for an enemy.

Where a trust company reported to the Alien Property Custodian that one of its clients was a resident of enemy territory, and that under a trust agreement she had a right to demand of the trust company that certain moneys and securities held by it be turned over to her, the Alien Property Custodian could justly determine that the properties were held for an enemy on that report alone, under Trading with the Enemy Act, § 7c (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d).

At Law. Suit by Francis P. Garvan, as Alien Property Custodian, against the Commercial Trust Company of New Jersey. On rule to show cause why certain moneys and securities should not be turned over to the Alien Property Custodian. Rule made absolute.

⊂═⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Elmer H. Geran, U. S. Atty., of Ashbury Park, N. J., and Lucien H. Boggs and Dean Hill Stanley, Sp. Asst. Attys. Gen., for petitioner.

Fisk & Fisk, of Jersey City, N. J. (Seldon Bacon, of New York City, and J. Fisher Anderson, of Jersey City, N. J., of counsel), for respondent.

RELLSTAB, District Judge. This is a suit to enforce demands made by the Alien Property Custodian under Trading with the Enemy Act Oct. 6, 1917, 40 Stat. 411 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½ff, 3115½g–3115½j), for the delivery to him of certain securities and moneys held by the Commercial Trust Company of New Jersey as trustee for the joint account of Helene J. von Schierholz and Frederick Wesche; the former having been determined to be an enemy not holding a license from the President.

In the Custodian's petition it is alleged, inter alia:

That on or about December 19, 1917, the trust company, acting in compliance with the terms of the Trading with the Enemy Act and the executive orders issued thereunder, reported in writing to the Custodian's predecessor in office that it held in trust certain specified securities and cash for the joint account of Frederick Wesche, of France, and Helene J. von Schierholz, of Germany, under a certain agreement which reads:

"Received, Jersey City, January 30, 1913, for the account of Frederick Wesche, of Paris, France, and Helene J. v. Schierholz, of Plaue, Thuringen, Germany, the bonds particularly set out in the schedule or list hereto annexed, and having a par value of five hundred and twenty-four thousand dollars ($524,000), to be held for the joint account of the said Frederick Wesche and Helene J. v. Schierholz, and to collect the interest to become due and payable on said bonds for the joint account of the said Frederick Wesche and Helene J. v. Schierholz, and to deliver over said bonds from time to time as requested, to the said Frederick Wesche, or to the said Helene J. v. Schierholz, or to the survivor of them; it being understood that the said bonds and the said interest money to be collected thereon are to be held and collected and delivered or paid over to either the said Frederick Wesche, or to the said Helene J. v. Schierholz, or to the survivor of them. Upon all interest moneys collected on said bonds there is to be retained by the undersigned for its services in the premises 2% of the amount so collected; this receipt is executed in triplicate.
"Commercial Trust Company of New Jersey,
"By J. W. Hardenbergh, President.
"Attest: [Seal]   Wm. J. Field, Secretary.
"The deposit of the bonds with the Commercial Trust Company of New Jersey and the terms upon which said trust company is to hold and deliver over the said bonds and to collect and pay over the interest thereon as set forth in the above receipt is hereby ratified and confirmed.
"Dated February, 1913.                          Fr. Wesche.
                                        "Helene J. v. Schierholz."

That on or about June 19, 1918, petitioner's predecessor in office, acting under the authority of said act and executive orders, after investigation, determined that said Mrs. von Schierholz was an enemy within the meaning of said act, and thereafter demanded the trust company to deliver to him all said securities and cash so held in trust. That on or about March 28, 1919, the trust company reported to the petitioner that it held, for the benefit of Wesche and Schierholz, additional sums of money, designated respectively as "checking account"

and "trust account." That on or about the last-named date the petitioner acting under said act and executive orders, further demanded the trust company to deliver to him the said cash moneys and certain securities therein described.

In these demands (copies of which were annexed to the petition and made a part thereof) it is recited that they are made pursuant to the authority vested in the Alien Property Custodian by the Trading with the Enemy Act and the amendments thereto and the proclamations and executive orders issued thereunder, and that after investigation the Custodian determined that the said Mrs. von Schierholz was an enemy within the purview and meaning of the said act, not holding a license granted by the President. The later of the two demands, dated March 28, 1919, declared that the therein described securities and income accrued and collected thereon were by the trust company "owing and held for, on account of, on behalf of, and for the benefit" of the said Mrs. von Schierholz, and that the Custodian seized the same and required that the securities be conveyed to him, and that the cash therein specified be delivered to him, both securities and cash to be held by him as such Custodian, to be administered and accounted for by him as provided by law.

The petitioner further alleged that, by virtue of said determinations and demands made by petitioner and his predecessor in office, petitioner, as Custodian, was vested with all the beneficial interest in said moneys and other properties, and that by virtue of said act and executive orders and the facts alleged in the petition he was the only person entitled to the said moneys and property, but that the trust company refused, and continues to refuse, to recognize his authority as Custodian, and refuses to deliver said money or property to him.

On the filing of such petition a rule was issued, requiring the trust company to turn over such moneys and properties to the petitioner, or show cause why an order should not be made requiring it to do so. On the hearing of this rule the trust company appeared and filed its answer, setting up a number of grounds for refusing to obey such demands. These may be grouped under two heads: First, that the Alien Property Custodian has not shown that he has complied with the provisions of the Trading with the Enemy Act, so as to entitle him to the possession of these properties; and, second, that, having appealed to a court of equity to enforce his demands, that court will determine the question of title or interest in such properties, and award possession to the Custodian only of such properties as belong to or are held for the benefit of an enemy.

Section 5 (a) of the act provides that:

"The President may exercise any power or authority conferred by this act through such officer or officers as he shall direct."

Section 6 authorizes him to appoint an Alien Property Custodian, who is "empowered to receive all money and property in the United States due or belonging to an enemy." By executive order of October 12, 1917, the President vested in the Alien Property Custodian, an officer appointed under the act, "the executive administration of all the provisions of section 7 (a), section 7 (c) and section 7 (d)" of the act, "in-

cluding the power and authority conferred upon the President by the provisions of section 7 (c)." By executive order of December 3, 1918, the President vested in such Custodian "the executive administration of all of the provisions of subsection (c) of section 7" of the act as amended by the Act of November 4, 1918.

The Custodian's demands upon the trust company were made under section 7 (c) of the Act, the later demand after such subsection had been amended. As amended, this subsection, so far as pertinent to the present inquiry, reads:

"(c) If the President shall so require, any money or other property including * * * choses in action, and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, or the same may be seized by the Alien Property Custodian; and all property thus acquired shall be held, administered, and disposed of as elsewhere provided in this act."

Section 7 (e) provides:

"No person shall be held liable in any court for or in respect to anything done or omitted in pursuance of any order, rule, or regulation made by the President under the authority of this act."

[1] By these excerpts it is manifest that the Custodian, as the representative of the President, had ample authority to determine, after investigation, whether property was held for or on behalf of an enemy, and to insist that such property be turned over to him, if held for an enemy. Stoehr v. Wallace (decided February 28, 1921) 255 U. S. 239, 41 Sup. Ct. 293, 65 L. Ed. ——. And the trust company will be fully protected on a compliance with the Custodian's demands. Garvan v. Marconi Wireless Telegraph Co. of America (decided by this court) 275 Fed. 486, and cases therein cited.

[2] However, while the making of such determinations and demands with reference to the properties in question is not disputed, it is insisted that the preliminary investigation required by the act was not made. But this challenge is met by the positive assertion in the determinations and demands that investigation was made. This precludes any further inquiry in proceedings like the present, instituted under section 17 of the act, which are merely possessory. Central Union Trust Co. of N. Y. v. Garvan, 254 U. S. 554, 41 Sup. Ct. 214, 65 L. Ed. ——; Stoehr v. Garvan, supra.

[3] The trust company also claims that at most but a part of this property is owned by Mrs. von Schierholz, and that a proper investigation would have revealed that fact. Under the trust agreement herein set out the trust company held the securities therein referred to and the interest money to be derived therefrom, in trust "for the joint account of the said Frederick Wesche and Helene J. von Schierholz," and it was obligated to deliver or pay over such securities and interest "to either the said Frederick Wesche or to the said Helene J. von Schierholz, or to the survivor of them." So far as the trust company was concerned, it made no difference what were the relative rights of

the cestuis que trustent in and to these moneys and securities. It was bound to deliver them to either on demand. This being so, if either of these persons was an enemy within the meaning of the Trading with the Enemy Act, the Alien Property Custodian, by taking the requisite steps under the act, which he did, would be substituted in the place of the enemy, and entitled to demand and recover the trust fund. By section 2 of this act "any individual * * * of any nationality, resident within the territory * * * of any nation with which the United States is at war" is an enemy within the meaning and purpose of the act. This definition embraces Mrs. von Schierholz, for she was a resident of Germany, which, at the time of the determinations and demands, was enemy territory.

The trust company concededly is but a trustee of these properties. Its contractual obligation to its cestuis que trustent was superseded by the duty cast upon it by the Trading with the Enemy Act. On the demands made by the Custodian it was its duty to comply with them in every particular.

[4] The question whether Wesche, or any other person other than Mrs. von Schierholz, has any title or interest in these moneys and securities, can be raised only by filing a claim and instituting the proceedings as provided by section 9 of the act. Stoehr v. Garvan, supra; American Exchange National Bank v. Garvan (C. C. A. 2) 273 Fed. 43. This section, as amended June 5, 1920 (41 Stat. 977, c. 241), long before the present suit was brought, amply protects the rights of claimants to properties taken over by the Alien Property Custodian, and a determination of such rights has no place in the present proceedings, which. as noted, are purely possessory in character.

[5] In the instant case the trust company's report to the Custodian showed that Mrs. von Schierholz was a resident of enemy territory, and that under the trust agreement she had a right to demand of the trust company that the moneys and securities in question be turned over to her. On that report alone the Custodian could justly determine that the properties were held for an enemy. Having so determined, his right to secure them cannot be resisted or questioned by the trust company. This conclusion renders it unnecessary to consider any of the other grounds stated in the answer or briefs.

The rule is made absolute.