**In re SUTHERLAND, Alien Property Custodian.**

District Court W. D. New York. February 15, 1927.

Supplemental Opinion, February 19, 1927.

1. **Pleading** ⊚═8(6)—**Denials that stock certificates issued to alien enemy were lawfully issued held mere conclusions (Trading with the Enemy Act, § 17 [Comp. St. § 3115½i]).**

On application of Alien Property Custodian for an order directing cancellation of shares of stock and issuance and delivery of new certificates of stock to him under Trading with the Enemy Act of Oct. 6, 1917, § 17 (Comp. St. § 3115½i), denials in answer that shares were lawfully issued or that alien enemy corporation, to which they were issued, was the lawful owner thereof, *held* mere conclusions, in absence of any supporting facts.

2. **War** ⊚═12—**Demand of Alien Property Custodian establishes his right to possession of property demanded without determining ownership (Trading with the Enemy Act, § 7 [c], as amended Nov. 4, 1918 [Comp. St. § 3115½d] and § 9 [Comp. St. § 3115½e]).**

Under Trading with the Enemy Act of Oct. 6, 1917, § 7 (c), as amended Nov. 4, 1918 (Comp. St. § 3115½d), on demand of Alien Property Custodian for property on the ground that it belongs to alien enemy, possessor must immediately surrender property to Custodian, and Custodian may apply to District Court to compel obedience to his demand, leaving question of ownership for subsequent settlement by filing claim for return thereof under section 9, which may be enforced by suit if not granted.

3. **War** ⊚═12—**Alien Property Custodian's determination that stock is enemy owned is conclusive in proceeding for possession thereof (Trading with the Enemy Act, §§ 9, 17 [Comp. St. §§ 3115½e, 3115½i]).**

Determination of Alien Property Custodian that stock issued to alien enemy corporation was enemy owned is conclusive on Custodian's application, under Trading with the Enemy Act of Oct. 6, 1917, § 17 (Comp. St. § 3115½i), for an order directing domestic corporation to cancel stock issued to alien enemy and to deliver new certificates to Custodian, notwithstanding enemy may not in fact be the lawful owner of the property seized; claimant's remedy being by petitioning for its return under section 9 (Comp. St. § 3115½e), and on refusal by filing suit for its recovery.

4. **Corporations** ⊚═65—**"Shares of stock" constitute title to stock, and confer proportionate rights in corporate entity and income.**

"Shares of stock" in corporation are not regarded as money or securities, but constitute title to the stock, and confer proportionate rights in corporate entity and income.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Share of Stock.]

5. **War** ⊚═12—**Whether contract under which stock was issued was in restraint of trade cannot be determined in proceeding by Alien Property Custodian for possession of certificates (Sherman Anti-Trust Act [15 USCA §§ 1–7, 15] Trading with the Enemy Act, § 17 [Comp. St. § 3115½i]).**

Whether contract under which stock of domestic corporation was issued to Alien Enemy Corporation was illegal as being in restraint of trade, in violation of Sherman Anti-Trust Act (15 USCA §§ 1–7, 15), cannot be determined in proceeding by Alien Property Custodian under Trading with the Enemy Act of Oct. 6, 1917, § 17 (Comp. St. § 3115½i), for an order directing domestic corporation to cancel on its books shares of stock so issued and to deliver to Custodian new certificates therefor.

**6. Contracts ⬤⟳138(1)—Illegality of collateral contract does not always prevent enforcement of rights secured thereunder.**

The illegality of a collateral contract does not always prevent enforcement of rights secured thereunder.

**7. Corporations ⬤⟳106—Rights of stockholder under executed illegal contract are enforceable.**

Rights of stockholder to stock obtained under an executed contract are enforceable, notwithstanding illegality of the contract.

**8. War ⬤⟳12—Alien Property Custodian's demand for stock isued to alien enemy, made before July 21, 1921, entitled Custodian to possession of certificates, dividends, and surplus profits.**

Demand by Alien Property Custodian for cancellation of certificates of stock of corporation issued to alien enemy corporation and for issuance of new stock certificates to Custodian in their place, made before Congress declared war ended on July 21, 1921, *held* to entitle Custodian to new certificates and cancellation of certificates issued to alien enemy and possession of the dividends and surplus profits declared on such shares, though Custodian's power to seize property terminated on July 21, 1921.

In the matter of the application of Howard Sutherland, as Alien Property Custodian, for an order directing the Eastman Kodak Company and another to cancel on its books certain shares of its common stock and to issue and deliver to the said Alien Property Custodian new certificates, and directing the Security Trust Company to countersign such certificates as registrar of the stock of the Eastman Kodak Company. On motion by the Alien Property Custodian to strike out irrelevant allegations and denials in the answer and return of the Eastman Kodak Company and for a decree. Decree for plaintiff.

Richard H. Templeton, U. S. Atty., of Buffalo, N. Y.

A. Henry Walter, Sp. Counsel for the Alien Property Custodian, of Washington, D. C.

Dean Hill Stanley, Sp. Asst. Atty. Gen., of Washington, D. C., for petitioner.

Hubbell, Taylor, Goodwin & Moser, of Rochester, N. Y. (Herbert R. Reif, of Rochester, N. Y., of counsel), for Eastman Kodak Co.

HAZEL, District Judge. This is a motion instituted by the Alien Property Custodian against the Eastman Kodak Company under section 17 of the Trading with the Enemy Act (Comp. St. § 3115½i), to strike out irrelevant allegations and denials in the answer and return, and for a decree.

It is shown herein that on April 1, 1918, the then Alien Property Custodian, A. Mitchell Palmer, determined, after investigation, that the Vereinigte Fabriken Photographischer Papiere, a corporation of Dresden, Germany, is an enemy alien within the purview of the Trading with the Enemy Act of October 6, 1917 (Comp. St. §§ 3115½a–3115½j), and was vested with the title and interest in 2,845 shares of the common stock of the Eastman Kodak Company, a corporation with offices in this district, listed on its books in the name of the aforesaid enemy. The Custodian, in writing, demanded of respondent company a transference and delivery to him of said registered certificates of stock to the end that he would receive all notices issued to its stockholders of like class, exercise voting power thereunder, receive all dividends and distributive payments on account of such holding, and also demanded that the Eastman Company note upon its stock book the substance of said demand, furnishing a copy to its registrar, the Security Trust Company, of Rochester, N. Y., and report back to the Custodian compliance with the demands, and also that all payments and income then declared due on the capital stock ownership be remitted to him, and future dividends and income payments be remitted to his depositary, the Security Trust Company. The demands for dividends were complied with, during the war, by payment of accrued amounts, as required by section 7(c) of the act (Comp. St. § 3115½d), including those subsequently declared, up to and including July 1, 1925, On February 8, 1921, Francis B. Garvan, the successor Alien Property Custodian, made a further or supplementary demand and seizure, requiring cancellation of the enemy outstanding certificates of stock and the issuance of new ones to the Custodian in their place. In the several demands for possession, it was specifically stated to have been determined, on investigation, that said common stock was held by the Eastman Kodak Company for the benefit of the enemy. Though service of the demand for dividends, cancellation, and reissue of shares is admitted, there has been no compliance with the demand.

The answer and return filed by the Eastman Kodak Company does not deny any of the material allegations of the petition, but, in avoidance, denies, inter alia, that dividends on the shares of stock mentioned represented lawfully issued stock. In explanation of prior admissions made in its report or statement to the Custodian, dated July

17, 1923, to the effect that the enemy was believed to be the owner of 2,845 shares of its stock, the answer avers that the information then given was erroneously inserted in the reports, and that the said shareholder never was the lawful owner thereof. There is attached to the answer, a contract (Exhibit A), dated February 16, 1903, to which reference appears by notation upon the stock certificates, and reference is also made to an earlier contract, dated August 21, 1894. The latter, though not attached to the answer, was discussed at the hearing, and is an aid to disclosing the transactions between the parties.

[1] The answer contains denials that the certificates of stock lawfully represented stock, and denial that the shares were lawfully issued, or that the German company was the lawful owner thereof. These denials, however, are manifestly conclusions, wholly unsupported by any statement of facts.

The history of respondent's transactions with the alien enemy shows that the original contract was between one Christensen and the American Aristotype Company of Jamestown, N. Y., and relates to a secret process for manufacturing collodian photographic printing-out paper, and formula for baryta coating for use in its manufacture. This agreement was subsequently assumed by the Vereinigte Fabriken Photographischer Papiere Corporation and by the Eastman Kodak Company, a corporation of New Jersey, in place of the American Aristotype Company, and the later or new agreement conferred the right to manufacture the Christensen process in Great Britain, France, and Spain, countries not included in the first contract.

Because the answer has not attached the earlier agreement, nor an agreement between E. Van Bssch and Poulenc Frères, to which reference is also made in Exhibit A, petitioner suggests that, as the existing contract is not fully set forth in the answer, it should, on that ground, be stricken out, as impertinent and immaterial. It is not believed, however, to have been essential that either of these agreements should be attached to the answer, since the later agreement, expressing the consideration for the issuance of the shares, is sufficiently informative of the nature of the opposition to compliance with the demands of the Custodian.

The notation stamped on the certificates reads as follows:

"This certificate is issued subject to the provisions of a contract dated February 16, 1903, between the Vereinigte Fabriken Pho-tographischer Papiere of Dresden, Car. Christensen and the Eastman Kodak Company of New Jersey, and neither this certificate nor any of the shares represented by it are assignable excepting in accordance with the provisions of said contract."

1. Respondent contends that the contract of February 16, 1903, and the notations on the certificates disclose a void contract and void certificates, in violation of the antitrust laws of the United States, in that it was unlawfully agreed that the Vereinigte Fabriken Photographischer Papiere Corporation was not to manufacture or deal in collodian papers in Great Britain or North America for 100 years, and, accordingly, that said covenant is in restraint of trade, stifling competition in this country, and is condemned by the Sherman Anti-Trust Act (15 USCA §§ 1–7, 15).

The entire argument proceeds upon the theory that there can be no legal seizure and demand by the Alien Property Custodian of the stock certificates issued under a contract which was illegal, and which therefore had no existence; and, since the stock never became a property right, the Custodian is simply attempting to enforce an illegal contract on behalf of the German corporation.

[2] Before discussing the force of these contentions, there should first be an inquiry as to the power and authority of the Alien Property Custodian in a proceeding such as this. Concededly, in his official capacity, he exercised the statutory power to make determination of enemy property and take same into his possession, under the Trading with the Enemy Act, whenever, in his judgment, the evidence was deemed sufficient to adjudge that certain property or stock is owned by an enemy. The possessor, in such case, according to the act, must immediately surrender the property to him on demand; and, to compel obedience thereto, the Custodian may apply to the District Court for aid in obtaining possession, leaving the question of ownership for subsequent settlement by action of the claimant. Central Trust Co. v. Garvan, 254 U. S. 554, 41 S. Ct. 214, 65 L. Ed. 403; Garvan v. $20,000 Bonds (C. C. A.) 265 F. 477. If the person of whom demand for possession is made feels aggrieved, he may petition the Custodian for its return. But, before doing so, he is required, as I read the statute, to deliver the property, supposed to belong to the enemy, to the Custodian, and this includes "choses in action and all rights and claims of every character and description," held for the

benefit of the enemy, unless a license to hold same has been granted by the President (section 7[c] of the Trading with the Enemy Act, as amended November 4, 1918 [Comp. St. § 3115½d]). If not returned within 60 days following the petition for return, claimant may bring suit in the federal District Court to establish his rights to the property. Section 9 (Comp. St. § 3115½e). In construing these provisions, the Supreme Court, in Central Trust Co. v. Garvan, supra, in Stoehr v. Wallace, 255 U. S. 239, 41 S. Ct. 293, 65 L. Ed. 604, and in Commercial Trust Co. v. Miller, 262 U. S. 51, 43 S. Ct. 486, 67 L. Ed. 858, has emphatically ruled that the reservations contained in the act give protection to claimants, and that its phraseology "implies that mistakes may be made, and assumes that transfers will take place whether right or wrong."

[3] 2. The claim of error as to the issuance of the stock to the enemy company, arising from mistake of law or fact, does not, in my opinion, excuse withholding possession after seizure and demand by the Custodian, reciting his determination that the stock was owned by the enemy. It would make no difference that the enemy was not in fact the lawful owner of the property or chose in action seized, since the determination by the Custodian, that it was enemy owned, is conclusive, and leaves to any claimant simply the right, as above stated, to petition for its return, and, on refusal, bring suit for its recovery. Garvan v. Commercial Trust Co. (D. C.) 275 F. 841, and cases cited.

3. Neither Exhibit A, nor the attached letters from the Custodian to defendant, are believed relevant or material in this proceeding. The seized certificates constitute evidence of ownership, and, whether their issue was in fact valid or invalid is not here and now a subject of inquiry. No liability arises, on delivery of the stock as demanded, for protection is afforded by the Trading with the Enemy Act for anything done pursuant to rule or regulation by the President or the official representing him. Great Northern Ry. Co. v. Sutherland, 273 U. S. 182, 47 S. Ct. 315, 71 L. Ed. 596, recently decided by the Supreme Court; Commercial Trust Co. v. Miller, 262 U. S. 51, 43 S. Ct. 486, 67 L. Ed. 858; Miller v. Kaliwerke (C. C. A.) 283 F. 746.

[4, 5] 4. Nor is the argument persuasive that the demand implies enforcement of a contract in restraint of trade. Stock ownership in a corporation, in a proceeding such as this, is not to be tested by precontractual obligations or by choses in action as distinguished from rights of property that have separately become established. Shares of stock in a corporation are not regarded as money or securities, but constitute title to the stock and confer proportionate rights in the entity and in the corporate income. It was so held in the state of which respondent is a citizen. Graydon's Executors v. Graydon, 23 N. J. Eq. 229; and see Van Allen v. Assessors, 3 Wall. 573, 18 L. Ed. 229. This principle, relating to the character and effect of stock ownership, has also been applied in this state. Martin v. Niagara Falls Mfg. Co., 122 N. Y. 165, 25 N. E. 303; People ex rel. Hatch v. Reardon, 184 N. Y. 431, 77 N. E. 970, 8 L. R. A. (N. S.) 314, 112 Am. St. Rep. 628, 6 Ann. Cas. 515. The issuance and delivery of the stock under the contract of 1903, I must hold, gave the Vereinigte Fabriken Photographischer Papiere Corporation valid and enforceable property rights, even though the contract, under which they were issued became subject to attack for illegality. Whether it actually restrained trade in this country is not an issue in this proceeding which is purely possessory, brought under statutory authority in aid of the performance of duties required of the petitioner. If I am right in applying the rule that separate property rights eventuated by issuance of the stock, respondent cannot rightfully withhold compliance with the demand of the Custodian on the ground that the certificates issued to enable restraint of trade, and were therefore nonexistent. If the contract is in fact illegal, its illegality did not follow the stock to the extent of depriving the owner of its interest in the corporation. Primeau v. Granfield (C. C.) 180 F. 847.

[6] 5. The illegality of a collateral contract does not always prevent enforcement of rights secured thereunder. This clearly appears in Witmark v. Pastime Amusement Co. (D. C.) 298 F. 479, and in Primeau v. Granfield, supra, Judge Learned Hand said:

"It is true that the law will enforce no part of a contract the performance of any stipulation of which is forbidden, but the parties do not become outlaws when they make such a contract, and their rights in equity as well as at law are the same as those of others, in so far as they do not require the enforcement of any part of the contract."

[7] And where a contract is executed, though invalid, the rights of the stockholder are

nevertheless enforceable, regardless of its illegality. Upon this point Prof. Williston, in his work on Contracts, § 1661, says:

"Ownership of property, derived under a contract invalid because in restraint of trade, will be protected even against the person from whom it was derived. * * * Indeed it may be broadly stated rights of contract or property, unless directly promoting the illegal plan, are not curtailed by the plaintiff's participation in an illegal combination."

And see Gilbert v. American Surety Co. (C. C. A.) 121 F. 499, 61 L. R. A. 253, where it is ruled that estoppel is applicable in certain circumstances. In Harriman v. Northern Securities Co., 197 U. S. 298, 25 S. Ct. 493, 49 L. Ed. 739, the stock of the railroad was directly transferred to form an illegal combination, but the stock issue was nevertheless held valid, notwithstanding its issuance out of an illegal contract; the Supreme Court ruling that the stockholder acquired the ordinary rights of a stockholder, including the right to participate in dividends and in the distribution of the assets of the corporation on its dissolution, and, generally, that property delivered on an executed, illegal contract cannot, in the absence of special circumstances, be recovered back by any party in pari delicto.

The learned counsel for respondent endeavors to distinguish these holdings, contending, for example, that in the Harriman Case the stock at time of transfer had legal existence, while in this case the stock had no legal existence at any time. But I am unable to accept the reasoning that, assuming the contract in question to have been a violation of the Anti-Trust Act, the stock held by the German corporation since 1903, and the dividends paid before and during the war, became and were nonexistent. Other adjudications cited by him relate to instances where the stock issued without any consideration or value whatever, and was therefore a void issue. The principle of the adjudications upon which respondent in part relies is inapposite, for, in this case, a valuable consideration is shown to have passed, moving the parties in entering into the agreement.

The notation on the certificates is not of material significance. It simply restricts the sale of the stock, and provides for giving prior notice of sale. It does not affect the rights of ownership by the enemy company to which the Custodian has succeeded, but who contemplates no sale or assignment thereof.

6. We must not lose sight of the specific nature of the proceeding which, as pointed out, is to obtain possession (not title) of enemy alien stock after seizure and demand, payment of dividends, cancellation of old certificates, and the issuance of new ones without, however, conferring any greater rights in the corporation than are conferred by the original issue. Compliance with the demands in that relation does not, in my opinion, create a new stockholder whose rights cannot be disputed, in a proper action, in the future, because of the illegality of the stock issue.

7. Neither the asserted illegality of the contract and the stock issue, nor an intent to restrain trade are affirmatively alleged in the answer, as heretofore stated, though the contract has restrictive clauses in its manufacture and use in this country. But no facts are alleged to substantiate the restriction, and appending the contract to the answer, unsupported by facts, as distinguished from mere conclusions, does not negative presumptive legality or adequate consideration. The appended contract and references thereto in the answer must be stricken out as irrelevant and immaterial, and petitioner have judgment on the pleadings.

[8] 8. This court is not called upon to indicate a remedy by which respondent may be relieved of participation in an asserted illegal act, though it was suggested at the hearing that relief may be afforded under a provision of the Clayton Act (38 Stat. 730) in a case where a person or corporation has been injured or is threatened with injury or damage by violation of the anti-trust laws. See Conn. Tel. & Elec. Co. v. Automotive Co. (D. C.) 14 F.(2d) 957. That the petitioner is within his rights in applying to this court to require the respondent company to deliver reissued stock certificates to the Custodian has again recently been held, by the Supreme Court, to be authorized by section 17 of the Trading with the Enemy Act. Great Northern Ry. Co. v. Sutherland, 273 U. S. 182, 47 S. Ct. 315, 71 L. Ed. 596, decided January 17, 1927. He is entitled to the possession of new certificates for the old certificates registered in the name of the Vereinigte Fabriken Photographischer Papiere Corporation, and to the possession of the dividends and surplus profits declared upon the shares since July 1, 1925.

9. Although the Custodian's power to seize the property terminated when Congress declared the war ended on July 21, 1921, yet the seizure and demand in question were made prior thereto, and his rights to

the possession of the stock ran from the time of such seizure and demand. See In re Miller (C. C. A.) 288 F. 760. In Miller v. Rouse (D. C.) 276 F. 715, the demand was properly signed by the Custodian before the war ended, but not served until after peace was declared, and such a demand was held ineffective to vest title to the property in the Custodian.

A decree in favor of petitioner, in accordance with these views may be entered on giving notice to the respondent.

### Supplemental Opinion.

The foregoing pages had been transcribed on arrival of respondent's reply brief—a brief that I have examined with interest and I hope with understanding. In the main the averment emphasizes the contentions made at the bar, to wit, that the seized stock depends upon the legality of the contract with the German company; that its validity is an issue in this case; that corporate stock is not a vested property right, but simply constitutes a chose in action, which, admittedly, the Custodian may seize, if it exists; and that the determination and demand by the Custodian did not confer any right to enforce payment of dividends declared after July 2, 1921.

Whether stock ownership is a vested property right or a mere chose in action, or the shareholders are merely entitled to an equitable right in the corpus, or to participate in the profits, are questions that are variously stressed and defined. They do not require discussion additional to what has already been said. It is believed sufficient, for the determination of the questions herein involved, that the German company had a supposed interest in the stock in question, upon which for many years it received dividends from respondent; and, since the Custodian has determined that they were enemy owned, they must, on seizure and demand, be surrendered to him, or reissued as required.

Denial of lawful ownership, when admittedly the certificates thereof were issued and are recorded on respondent's books, and, indeed, upon which dividends were paid for upwards of 20 years, does not indicate nonexistence, even when coupled with the assertion that the contract resulting in issuance was in restraint of trade.

The principle, as it seems to me, upon which the Custodian rightfully proceeds, as already pointed out, is announced in Central Trust Co. v. Garvan, 254 U. S. at page 566, 41 S. Ct. 215, 65 L. Ed. 403, where it is said:

"As is obvious from the statement of the pleadings, the libels are brought upon the theory that these are purely possessory actions and that for the purposes of immediate possession the determination of the Enemy Property Custodian is conclusive, whether right or wrong. The claimants on the other hand set up substantive rights and seek to have it decided in these suits whether the funds are enemy property in fact and whether they have not the right to detain them. * * * There can be no doubt that Congress has power to provide for an immediate seizure in war times of property *supposed to belong to the enemy* [italics mine], as it could provide for an attachment or distraint, if adequate provision is made for a return in case of mistake. As it can authorize a seizure in pais, it can authorize one through the help of a court. The only questions are whether it has done so as supposed by the libelant, and, if so, whether the conditions imposed by the act have been performed. * * * But it is said that the subject of the section [7(a)] is enemy property only and therefore that the determination cannot be final in its effect. Day c. Micou, 18 Wall. 156 [21 L. Ed. 860]."

The determination by the Custodian, as the learned court ruled, is not final against claimant's rights; and by this term, broadly interpreted, is implied, I think, any rights of a record claimant to stock or rights of an actual owner, or any defenses in denial of ownership or in avoidance of liability. See The Conqueror, 166 U. S. 122, 17 S. Ct. 510, 41 L. Ed. 937.

To be sure respondent does not claim to be owner, merely disputing its validity or existence, but, nevertheless, since the stock represents the right to participate in profits, respondent presumably would be financially benefited if its claims of nonexistence were established. As said at the end of the opinion in the Central Trust Co. v. Garvan Case:

"The present proceeding gives nothing but the preliminary custody such as would have been gained by seizure. It attaches the property to make sure that it is forthcoming if finally condemned, and does nothing more."

The decree may be entered as above indicated.